EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Asociación de Residentes Estancias de Cidra<br>        Demandante-Peticionario<br><br>        Vs.<br><br>Future Developers and Contractors, Inc.<br>Administración de Reglamentos y Permisos<br>        Demandados-Recurridos | Certiorari<br><br>2000 TSPR 140 |
| --- | --- |

Número del Caso: CC-1998-1017

Fecha: 27/09/2000

Tribunal de Circuito de Apelaciones: Circuito Regional VI

Panel Integrado por:

> Hon. Brau Ramírez
> Hon. Colón Birriel
> Hon. Pesante Martínez

Abogado de la Parte Demandante-Peticionaria:

> Lcdo. Mario A. Beauchamp

Abogados de la Parte Demandada-Recurrida:

> Lcdo. Abraham Díaz González
> Lcda. Leonor Porrata Boria

Abogados de ARPE:

> Lcda. Alba K. Figueroa Abréu
> Lcdo. Luis S. Barreto Altieri

Materia: Revisión de Decisión de Agencia Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación de Residentes
Estancias de Cidra

    Demandantes-Recurrentes

       Vs.                                    CC-1998-1017   Certiorari

Future Developers and
Contractors, Inc. Administra-
ción de Reglamentos y Permisos

    Demandado

Opinión del Tribunal emitida por el Juez Asociado señor Hernández Denton


San Juan, Puerto Rico, a 27 de septiembre de 2000


En el presente recurso procede determinar si la Asociación de Residentes Estancias de Cidra posee capacidad jurídica para comparecer ante la Administración de Reglamentos y Permisos e impugnar cierto plano de desarrollo preliminar alterno aprobado por dicha entidad. Por entender que erró el Tribunal de Circuito al examinar únicamente si la referida asociación ostentaba la misma al amparo de la doctrina de corporación *de facto*, revocamos.

## I.

Future Developers and Contractors, Inc. (en adelante, Future Developers) sometió una consulta de ubicación ante la Junta de Planificación (en adelante, la Junta) para el desarrollo de la urbanización Estancias de Cidra. La referida urbanización se construiría en cuatro etapas separadas. La Junta aprobó la primera y segunda Fase del proyecto. Conforme lo aprobado, Future Developers procedió a vender los solares comprendidos en la Fase I representándole a los compradores que el proyecto no pasaría de setenta y cinco (75) casas y que la segunda y

última sección de Estancias de Cidra constaría de treinta y cuatro (34) casas en solares con cabida de mil (1,000) metros. Además, se propuso el desarrollo de facilidades vecinales dentro del proyecto tales como centro comunal y áreas de recreación pasiva.

Posteriormente, Future Developers sometió una solicitud de enmienda a la consulta para hacer una redistribución distinta de los terrenos y aumentar las residencias de la Fase II a cuarenta y tres (43), disminuyendo su cabida de mil (1,000) metros cuadrados a setecientos cincuenta (750) metros cuadrados. La Asociación de Residentes de Estancias de Cidra (en adelante, la Asociación de Residentes), no fue notificada de esta solicitud, a pesar de que en ese momento se encontraban viviendo en la primera etapa del proyecto el noventa por ciento (90%) de sus residentes.

Así las cosas, la Administración de Reglamentos y Permisos (en adelante, A.R.P.E.) aprobó un plano preliminar del proyecto. Igualmente, dicha entidad aprobó un segundo plano preliminar del proyecto donde se aumentaba nuevamente el número de residencias de la Fase II a sesenta y siete (67) casas. El nuevo plano aumentó la densidad residencial y redujo el área de facilidades vecinales.

La Asociación de Residentes no fue notificada ni participó en el procedimiento de aprobación del plano preliminar alterno. Sin embargo, al enterarse de la actuación de A.R.P.E., compareció oportunamente ante dicha agencia solicitando reconsideración de lo actuado. De esta forma, solicitó que se le permitiera intervenir en el procedimiento y que se señalara una vista evidenciaria para la discusión de sus objeciones. No obstante, A.R.P.E. declinó actuar sobre dicha moción.

Inconforme, la Asociación de Residentes presentó un recurso de revisión ante el Tribunal de Circuito de Apelaciones. En dicha ocasión el referido foro, invocando lo resuelto en Asoc. Residentes v. Montebello Dev. Corp., 138 D.P.R. 412 (1995), revocó la resolución de A.R.P.E. al entender que a la Asociación de Residentes no se le brindó la oportunidad de exponer sus argumentos ante la agencia ni se le notificó de los procedimientos ante la misma. Por ello, se devolvió el caso a dicha agencia para la celebración de una vista y la

formulación de las correspondientes determinaciones de hecho y conclusiones de derecho.

En cumplimiento de orden se citó una vista evidenciaria ante A.R.P.E. En la misma, Future Developers adujo que la Asociación de Residentes no tenía capacidad jurídica para actuar como parte interventora porque no había cumplido con los requisitos de ley exigidos a toda entidad corporativa. A tales efectos, presentó un certificado del Departamento de Estado que acreditaba que la referida asociación no había cumplido con los mencionados requisitos.

La Asociación de Residentes se opuso arguyendo que, aunque no había cumplido con los requisitos para ser considerada como una entidad corporativa, debía reconocércele personalidad jurídica para comparecer a los procedimientos al amparo de la doctrina de corporación *de facto*. Así, indicó que se había comportado como una corporación y que no fue hasta época reciente que descubrió que <u>su incorporador, el presidente de Future Developers, no había cumplido con todos los trámites necesarios para incorporarla</u>. Sobre el particular, la Asociación de Residentes presentó copia del certificado de incorporación otorgado y una misiva cursada por el Departamento de Estado, mediante la cual se devolvía a Héctor Torres Zayas, <u>presidente de Future Developers</u>, el certificado de incorporación radicado a nombre de la referida asociación. [1]

Además, la Asociación de Residentes le informó al oficial examinador de A.R.P.E. que había solicitado una vista administrativa ante el Departamento de Estado, razón por la cual le pidió que pospusiera su adjudicación. El propósito de la gestión ante el Departamento de Estado, según se desprende de los documentos que obran en autos, era completar el trámite necesario para incorporarse.

Sin embargo, tras escuchar las respectivas contenciones, el oficial examinador de A.R.P.E. determinó que la Asociación de Residentes no tenía capacidad jurídica para comparecer a los procedimientos pero que los integrantes de dicha entidad podían comparecer en su carácter personal y

---

[1] La mencionada comunicación dispone, en lo pertinente:
"Estimado señor [Héctor] Torres:
    Le devolvemos el Certificado de Incorporación por la siguiente razón:
    1. Hacer constar las condiciones requeridas de los socios o que se harán figurar en los estatutos de la corporación.
    2. Incluir la dirección física de la oficina designada. [...]".

presentar prueba en apoyo de sus alegaciones. Ante tal determinación, la representación legal de la Asociación de Residentes afirmó que no tenía testigos ni prueba en apoyo de sus contenciones por razón de que los miembros de dicha entidad se negaban a comparecer en su carácter personal. Para explicar dicha negativa, se presentó en evidencia una misiva suscrita por el presidente de Future Developers y que le fue cursada a los miembros de la Asociación de Residentes. En lo pertinente, dicha comunicación indica: "todas aquellas personas que persistan en obstaculizar el ejercicio legítimo de nuestros derechos [los de Future Developers], tendrán que responder ante los tribunales en su carácter personal por los daños y perjuicios que nos han causado.[...]".

Al analizar la referida comunicación, el oficial examinador de A.R.P.E. reiteró su determinación de negar el reconocimiento de capacidad jurídica a la Asociación de Residentes. A su vez, sostuvo que permitiría a los integrantes de la Asociación de Residentes comparecer en su carácter personal. Esto pues, dicho funcionario entendió que la misiva cursada sólo resumía el estado de derecho vigente a partir de la aprobación de la Ley General de Corporaciones de 1995[2], la cual en su Art. 1.06 (c) dispone[3]: "Todas las personas que actúen como corporación sin autoridad para ello, serán responsables solidariamente de todas las deudas y obligaciones incurridas o asumidas como resultado de esta actuación." Así, ante la negativa de los integrantes de la asociación a presentar prueba en su carácter personal, A.R.P.E. declaró sin lugar la reconsideración instada y reinstaló su resolución mediante la cual se autorizó el plano de desarrollo preliminar alterno para el proyecto de urbanización residencial.

Inconforme, la Asociación de Residentes recurrió al Tribunal de Circuito de Apelaciones. Tras analizar las comparecencias de las partes, dicho foro denegó la expedición del recurso solicitado al entender que la Asociación de Residentes no tenia capacidad jurídica para comparecer ante A.R.P.E. por no ser una corporación ni poder ser considerada una corporación *de facto*. El referido tribunal entendió que la agencia le brindó una amplia oportunidad a los miembros de la asociación para que participaran en su carácter personal

---

[2] Ley Núm. 144 de 10 de agosto de 1995. 14 L.P.R.A. sec. 2601 et. seq.
[3] 14 L.P.R.A. sec. 2606.

en apoyo de sus alegaciones. Por ello, concluyó que habiéndose estos negado a presentar prueba, procedía denegar el auto solicitado.

De dicho dictamen la Asociación de Residentes recurre ante nos. En síntesis, alega que erró el foro apelativo al no reconocerle capacidad jurídica para comparecer ante A.R.P.E. bajo la doctrina de corporación *de facto*.

Luego de analizar el recurso instado, le concedimos a la parte recurrida, Future Developers, un término para que mostrara causa por la cual no debíamos revocar la sentencia dictada por el foro apelativo. Tras examinar su comparecencia y el expediente del recurso, procedemos a resolver según intimado.

## II.

Antes de entrar a analizar la controversia de autos, es necesario precisar varios conceptos relacionados a la legitimación que posee una parte para comparecer a un pleito. Esto pues, en ocasiones, los mismos se utilizan indistintamente.[4] En particular nos referimos a los siguientes conceptos: "capacidad", "legitimación activa (*standing*)" y, "parte realmente interesada" según formulado en la Regla 15.1 de Procedimiento Civil. Veamos.

La doctrina suele distinguir entre capacidad jurídica y capacidad de obrar.[5] La primera, equivalente al concepto de personalidad jurídica, se ha definido como la aptitud para ser sujeto de derechos y obligaciones.[6] Frente

---

[4]  A tales efectos, véase el escrito intitulado "Escrito en Cumplimiento de Orden" radicado ante nos por Future Developers donde señala: "Si bien se ha reconocido la personalidad jurídica (acción legitimada) de las asociaciones para incoar ciertas acciones en representación de sus miembros [...]".

Sobre el particular cabe recordar que inclusive, en pasadas ocasiones, habíamos traducido el término "*standing*" como capacidad jurídica. Sin embargo, ya desde Colegio de Opticos v. Vani Visual, 124 D.P.R. 559 (1989) reconocimos que el término acción legitimada es más apropiado.

Para una discusión más detallada de esta temática véase, Wright & Miller, Federal Practice and Procedure, Civil 2d, sec. 1542.

[5]  Véase, José Luis Lacruz Berdejo, Elementos de Derecho Civil, Tomo 1, Vol. 2, Bosch, Barcelona, 1992, pág. 11; Manuel Albaladejo, Derecho Civil, Tomo 1, Vol. 1, 11ma. Ed., Bosch, Barcelona, 1989, págs. 230 *et. seq.*; José Puig Brutau, Fundamentos de Derecho Civil, Tomo 1, Vol. 1, Primera Parte, Bosch, Barcelona, 1979, págs. 259 *et. seq.*

[6]  Véase, Laureano Pérez v. Soto, res. el 14 de junio de 1996, 141 D.P.R. ___ (1996), citando a Diego Espín Cánovas, Manual de Derecho Civil Español, Vol. 1, 8va Ed., Editorial Revista de Derecho Privado, 1982, págs. 246-247. Sobre la equiparación de los conceptos capacidad jurídica y personalidad véase, Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, Vol. 1, Programa de Educación Jurídica Continua Universidad Interamericana, (1997), pág. 47.

a ella se contrapone la capacidad de obrar, la cual se concibe como la capacidad para gobernar esos derechos y obligaciones de que se es titular.[7]

De otra parte, el concepto legitimación activa ("*standing*") va dirigido a delinear el armazón de control judicial sobre los oficiales públicos y es de especial importancia en el Derecho Constitucional. Laurence Tribe, American Constitutional Law, Vol. 1, 3ra ed., Foundation Press, 2000, pág. 386.

De igual forma, cabe resaltar el concepto "parte realmente interesada", esbozado en la Regla 15.1 de Procedimiento Civil, el cual es un medio para identificar a la persona que posee el derecho que se pretende proteger. Hernández Colón, Derecho Procesal Civil, Michie, 1997, sec. 1002. Este término nos obliga a examinar si el demandante tiene un interés significativo en la acción que ha presentado. Id.

Resulta interesante destacar la discusión que hacen Wright & Miller sobre estos conceptos. A tales efectos señalan:

> El concepto de parte realmente interesada, según utilizado en la Regla 17(a) [Regla 15.1 de Procedimiento Civil de Puerto Rico] es un medio para identificar a la persona que posee el derecho que se pretende poner en vigor. Por lo tanto, el término dirige su atención a determinar si el demandante tiene un interés significativo en la acción particular que ha instituido[.] Por el contrario, el concepto capacidad está concebido para ser el derecho personal de una parte para litigar en un tribunal federal. [...] Por ende, es posible ser la parte realmente interesada y aún carecer de capacidad para ser demandado debido a que la persona es mentalmente incompetente o menor de edad. [...] [De otra parte] [e]n el ámbito del derecho público, cuando una actuación gubernamental es impugnada bajo el fundamento de que viola derechos privados o algún principio constitucional, el determinar si el peticionario es la parte adecuada para entablar la reclamación raras veces se analiza en términos de parte realmente interesada o bajo el concepto de capacidad. Por el contrario, los tribunales han tendido a depender de la doctrina, de creación judicial, denominada legitimación activa [*standing to sue*]. Wright & Miller, *ob. cit.*, sec. 1542. Traducción Nuestra.

Sobre la distinción de los referidos conceptos, el Profesor Rafael Hernández Colón ha señalado: "Los conceptos de parte interesada o de *standing* no atañen a la personalidad porque se tratan de relaciones jurídicas que son externas a ella y que representan el interés en el conflicto que se somete a decisión judicial." Hernández Colón, *ob. cit.*, sec. 1002, nota al calce

---

[7] Luis Lacruz Berdejo, *ob. cit.* a la pág. 11

Núm. 79. De esta forma, el Profesor Hernández Colón afirma:

> [Así,] [e]s posible ser la parte realmente interesada y carecer de capacidad para demandar debido a que una persona esté incapacitada mentalmente[.] Por otra parte, un demandante puede tener capacidad para demandar, pero si ha cedido su interés en la reclamación antes de instar la acción, deja de ser una parte realmente interesada. El concepto de *standing*, por su parte, opera dentro del ámbito del derecho público, distinto de los conceptos antes discutidos, que operan bajo el palio del derecho privado. Id.

Por su parte, el Profesor José Julián Alvarez González ha elaborado sobre la distinción de los conceptos legitimación activa y capacidad. A tales efectos, sostiene: "El concepto 'capacidad' debe circunscribirse al análisis de la personalidad procesal de menores, dementes y otras personas de alguna forma privadas de los requisitos procesales necesarios para adelantar hábilmente sus intereses ante los tribunales". Alvarez González, Derecho Constitucional, 59 Rev. Jur. U.P.R. 247 nota al calce número 4. Así, el Profesor Alvarez González indica:

> "De esta forma, una persona puede tener capacidad jurídica para vindicar sus intereses ante los tribunales, pero aun así carecer de legitimación en un caso particular. Del mismo modo, una persona puede carecer de capacidad jurídica plena para vindicar sus intereses sin asistencia de otros, aun cuando posee legitimación en un caso particular. Id.

Habiendo delimitado el alcance de cada concepto, pasemos a considerar si la Asociación de Residentes posee capacidad jurídica para comparecer ante A.R.P.E. e intervenir en el procedimiento. Esto pues, en el caso ante nuestra consideración sólo se impugna la capacidad jurídica de la referida asociación.

## III.

El Reglamento de Procedimientos Adjudicativos de A.R.P.E.[8] resulta aplicable, *inter alia*, a todos los procedimientos adjudicativos conducidos ante dicha entidad relacionados con: (1) solicitudes de permisos para la construcción de edificios o estructuras; o para el uso y desarrollo de terrenos; (2) solicitudes de investigación y querellas; (3) celebración de vistas y; (4) el ejercicio de funciones investigativas y fiscalizadoras.[9]

La sección 4.01 del referido reglamento, relativa al proceso de intervención, dispone que cualquier persona que tenga un interés legítimo en

---

[8] Reglamento Núm. 3915, aprobado el 21 de abril de 1989.

[9] Reglamento de Procedimientos Adjudicativos de A.R.P.E, sec.

el procedimiento adjudicativo podrá someter una petición por escrito debidamente fundamentada para que se le permita participar. Por su parte, la sección 2.01 (14) define "persona" como "<u>toda persona natural o jurídica de carácter público o privado</u>". [Enfasis Suplido].

El Artículo 27 del Código Civil[10] dispone que son personas jurídicas: (1) las corporaciones y asociaciones de interés público, <u>con personalidad jurídica reconocida por la ley</u>; (2) las corporaciones, compañías o asociaciones de interés particular, sean civiles, mercantiles o industriales, a las que la <u>ley conceda personalidad jurídica</u>.

En nuestro sistema de derecho está establecido que las "asociaciones no incorporadas no son entidades distintas y separadas de los miembros que la componen por lo que no tienen personalidad jurídica propia." Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, Tomo I, Publicaciones J.T.S., pág. 355 (2000). Véase además, Hernández Colón, *ob. cit.*, sec. 1101. Por ello, para que una asociación no incorporada pueda demandar y ser demandada, es necesario que se particularice e individualice expresando los miembros que la componen.[11]

Ahora bien, una asociación incorporada sí posee personalidad jurídica propia, separada de la de sus miembros o titulares.[12]

El poder llevar a cabo una actividad mediante la forma corporativa es un privilegio que el Estado otorga a quienes satisfagan las exigencias de la Ley General de Corporaciones.[13] Sin embargo, en el proceso de organizar una corporación, en ocasiones, involuntariamente no se satisfacen algunos de los requisitos legales para incorporarse.[14] En dichos casos no existe una corporación *de jure* y quienes han estado llevando a cabo las gestiones a nombre de la corporación que no llegó a organizarse debidamente se exponen a responsabilidad personal.[15] Como expone el Profesor Carlos E. Díaz Olivo, para proteger a dichas personas, los tribunales han desarrollado varias doctrinas

---

1.04.
[10]   31 L.P.R.A. sec. 101.
[11]  *Id.*
[12] Carlos E. Díaz Olivo, <u>Corporaciones</u>, Publicaciones Puertorriqueñas, 1999, pág. 11.

[13]  *Id.* a la pág. 47.
[14]  *Id.* a la pág. 48.
[15]  *Id.*

cuyo propósito es evitar un ataque colateral a la falta de existencia corporativa, aún cuando, en efecto, no se haya cumplido con todas las exigencias legales.[16] Estas doctrinas son la corporación *de facto* y la corporación por *estoppel*.

Una corporación *de facto* ha sido definida como una creada de forma tan defectuosa como para no poder ser considerada como una corporación de jure.[17] Sin embargo, a pesar de esto, la misma es reconocida como tal en vista de su intento bonafide de incorporación baja las disposiciones legales existentes y en atención al ejercicio de los poderes corporativos.[18] A tenor con dicha doctrina, se ha reconocido que una corporación *de facto* tiene una existencia independiente y diferente de la de sus miembros, pudiendo demandar y ser demandada. Véase, Fletcher Cyc Corp. secs. 3762 y 3857 (Ed. Perm.).

En <u>Cordero v. Supermercado San Juan, Inc.</u>, 103 D.P.R. 783 (1975), adoptamos la doctrina de la corporación *de facto*, aunque de manera restringida. Esto pues, afirmamos que para considerar a una entidad como tal era necesario que: i) haya un cumplimiento sustancial con la Ley de Corporaciones y se haya otorgado y radicado el certificado de incorporación; ii) haya actuado como tal corporación y que sólo falte cumplir con algunos de los requisitos que la ley exige.

Por su parte, la corporación por *estoppel* no es sino la aplicación de la doctrina en equidad en el contexto de las transacciones llevadas a cabo con una corporación.[19] Así, como afirma el Profesor Díaz Olivo, aquel que ha negociado con una corporación está impedido de negar posteriormente la existencia de tal entidad.[20]

Con relación a esta doctrina hemos señalado que una persona que contrata con una corporación está impedida de negar la existencia de la misma. <u>West India Oil Co. v. Tormos</u> 36 D.P.R. 646 (1927).

No obstante, como a bien ha tenido señalar el Profesor Díaz Olivo, con la aprobación de la Ley General de Corporaciones de 1995 se alteró la situación jurídica con respecto a estas figuras.[21] En su artículo 1.06(c)[22] la referida

---

[16] *Id.*
[17] Fletcher Cyc Corp. sec. 3761 (Ed. Perm.).
[18] *Id.*
[19] Díaz Olivo, ob. cit. a la pág. 49.
[20] *Id.*
[21] *Id.*

legislación dispone: "Todas las personas que actúen como corporación sin autoridad para ello, serán responsables solidariamente de todas las deudas y obligaciones incurridas o asumidas como resultado de esta actuación."

Como se conoce, el referido inciso proviene de la sección 146 del "Model Business Corporation Act" de 1950, la cual contiene un lenguaje similar al utilizado en nuestro Artículo 1.06(c).[23] El comentario de la sección 146 señala que la misma está diseñada para eliminar cualquier aplicación de la doctrina de corporación *de facto*.[24] Esto pues, según se indica, la única autorización para actuar como una corporación bajo dicha legislación se deriva del cumplimiento de los requisitos legales para incorporarse.[25]

Cabe resaltar que el "*Model Business Corporation Act*" fue revisado en 1984 alterando esta postura, de suerte que tuviesen vigencia nuevamente algunos aspectos de las doctrinas antes discutidas. Sin embargo, al aprobarse la Ley General de Corporaciones de 1995, el legislador prefirió reafirmar la postura anterior, la cual elimina de nuestra jurisdicción las doctrinas objeto de discusión.

Esta interpretación es compartida por el Profesor Díaz Olivo quien estima que las doctrinas *de facto* y de *estoppel* han sido eliminadas de nuestra jurisdicción. A tales efectos, afirma:[26]

> En lo sucesivo, los tribunales no tendrán que indagar acerca de las consecuencias en términos de equidad de una incorporación defectuosa. El reconocimiento como corporación debe limitarse a aquellas circunstancias en las que se ha emitido debidamente el certificado de incorporación. Por consiguiente, quienes actúen como corporación y realicen transacciones a nombre de una corporación sin autoridad para ello, no podrán invocar para su protección las doctrinas *de facto* y de *estoppel* [.]

No puede ser de otra manera. El Estado es quien reconoce la ficción de la personalidad corporativa y a quien le corresponde conceder el privilegio de operar como tal.[27] Quienes no han satisfecho las exigencias legales no deben tener el privilegio de funcionar bajo dicha entidad. Por ello, habiendo el

---

[22] 14 L.P.R.A. § 2606.

[23] La referida sección dispone: "Todas las personas que pretendan actuar como una corporación sin autorización para serlo serán solidariamente responsables de todas las deudas y obligaciones incurridas o provenientes de dicha actua-ción." Traducción Nuestra.

[24] Model Business Corporation Act Annotated, Vol. 2, American Bar Foundation, 1971, sec. 146, págs. 908-909.

[25] *Id.*

[26] Díaz Olivo, *ob. cit.* a la pág. 50.

[27] *Id.* a la pág. 12.

Estado delimitado las circunstancias en las que una entidad podrá asumir la forma corporativa, forzoso es concluir que por virtud de la Ley General de Corporaciones de 1995 las doctrinas *de facto* y de *estoppel* han sido eliminadas de nuestra jurisdicción.

Sin embargo, aún cuando la Ley General de Corporaciones de 1995 ha eliminado las referidas doctrinas, en su Artículo 12.08, 14 L.P.R.A. § 3133, conserva cierto aspecto de la doctrina *de estoppel*.[28] El Artículo en cuestión dispone, en lo pertinente:

> A ninguna corporación organizada con arreglo a este subtítulo, o creada al amparo de las leyes del Estado Libre Asociado, se le permitirá alegar o mantener como defensa en cualquier pleito contra la corporación, la falta de organización conforme a derecho. A ninguna persona que sea demandada por la corporación se le permitirá alegar como defensa tal falta de organización conforme a derecho.

Según expone el Profesor Díaz Olivo, el referido articulado permite que en ciertas circunstancias las partes en un pleito judicial no puedan invocar como defensa la falta de organización de una corporación.[29] A tales efectos, el citado comentarista señala:[30]

> El Artículo [12.08] impide que en un proceso judicial una persona que en el pasado negoció con la parte demandante, como si ésta fuera una corporación debidamente constituida, pueda desconocer la existencia de la corporación, con la intención de derrotar el reclamo del demandante. De igual manera, si se inicia un pleito en contra de una persona que ha actuado y llevado a cabo negocios como si fuera una corporación, ésta estará impedida de negar su falta de constitución como organización para escapar responsabilidad.
>
> Es importante considerar que la regla dispuesta en el Artículo 12.08 se activa siempre y cuando al momento de iniciarse la acción en los tribunales la corporación ya esté debidamente organizada, aun cuando no lo hubiere estado cuando se inició la acción que da base al pleito. Si la corporación no se hubiere organizado al momento en que comienza el pleito, el Artículo 12.08 no aplica, y habremos de remitirnos a lo dispuesto en el Artículo 1.06(c)[.]

De otra parte, existe cierto procedimiento relacionado a los asuntos que discutimos, el cual aún se contempla en nuestra legislación corporativa. Nos referimos al certificado de corrección provisto en el Artículo 1.03(F) de la Ley General de Corporaciones de 1995, 14 L.P.R.A. § 2603. El mencionado inciso dispone:

> Siempre que un documento radicado en el Departamento de Estado a tenor con las disposiciones de este subtítulo sea un informe inexacto de la acción corporativa correspondiente o fuese otorgado, sellado o certificado errónea o defectuosamente, el documento podrá corregirse mediante la radicación en el Departamento de Estado de un certificado de corrección que se otorgará, certificará, radicará e inscribirá según las

---

[28] *Id.* a la pág. 52.

[29] *Id.*

[30] *Id.*

disposiciones de esta sección. El certificado de corrección deberá especificar las inexactitudes o defectos que se habrán de corregir y consignará esa parte del documento en su forma correcta. El documento corregido tendrá vigencia a partir de la fecha de radicación del documento original, excepto para las personas afectadas de forma sustancial y adversa por la corrección para las cuales el documento corregido regirá a partir de la fecha de radicación de éste.

Como se podrá apreciar, este inciso provee un mecanismo para corregir defectos o errores contenidos en un documento radicado ante el Departamento de Estado.[31] De esta forma, se puede otorgar un certificado de corrección, indicando el error y hacer constar la corrección que se interesa, sin que haya que presentar nuevamente la totalidad del documento original.[32] Por virtud de este procedimiento, se podría corregir un certificado de incorporación que haya sido otorgado, sellado o certificado errónea o defectuosamente o que sea un informe inexacto de la acción corporativa correspondiente. Véase, Franklin Balotti y Jesse A. Finkelstein, The Delaware Law of Corporations and Business Organizations, Prentice Hall Law & Business, 1988, sec. 1.9.

La ventaja del referido procedimiento, como advierte el Profesor Luis Mariano Negrón Portillo[33], es que de ordinario al corregirse el documento original, el mismo se entiende corregido desde su fecha de radicación original. Así, la corrección efectuada tendrá efecto retroactivo a la fecha de presentación del documento original.[34]

A tenor con esta normativa, examinemos la controversia ante nuestra consideración.

**IV.**

La Asociación de Residentes pretende que se le reconozca capacidad jurídica a tenor con la doctrina de corporación *de facto* para así intervenir en el proceso ante A.R.P.E. No le asiste la razón.

Por virtud de las secciones 2.01 (14) y 4.01 del Reglamento de Procedimientos Adjudicativos de A.R.P.E., *supra*, la intervención en los procedimientos ante dicha entidad se limita a personas naturales o jurídicas de carácter público o privado.

---

[31] *Id.* a la pág. 42.

[32] *Id.*

[33] Luis Mariano Negrón Portillo, Derecho Corporativo Puertorriqueño, 2da. edición, 1996, págs. 89-91.

Como explicamos, las asociaciones no incorporadas no tienen personalidad jurídica en nuestro sistema de derecho. De igual forma, tampoco se puede reconocer personalidad jurídica al amparo de las doctrinas de corporación *de facto* y *de* estoppel pues las mismas han sido eliminadas de nuestra jurisdicción por virtud de la Ley General de Corporaciones de 1995. El Estado ha delimitado las circunstancias en que se puede operar bajo la figura corporativa. No se puede ostentar el referido privilegio sin cumplir con la legislación vigente.

De otra parte, tampoco es aplicable el Artículo 12.08 pues el mismo requiere que al momento de iniciarse la acción judicial la corporación ya esté debidamente organizada. Del expediente ante nos no hay prueba de que, al momento de solicitar la intervención, la Asociación fuese una corporación *de jure*.

Ahora bien, el hecho de que no se pudiesen invocar las doctrinas *de facto* y *estoppel* no excluía la posibilidad de que posteriormente la Asociación subsanase las deficiencias en el proceso de incorporación y obtuviese el certificado correspondiente por el Departamento de Estado, a tenor con lo dispuesto el Artículo 1.03(F) de la Ley de Corporaciones.

Precisamente, esto fue lo que pretendió la Asociación de Residentes al cursar comunicación con el Departamento de Estado. Así, la referida asociación procuró corregir los defectos de su incorporación para poder intervenir en el procedimiento ante A.R.P.E.

Sin embargo, los foros recurridos, al dilucidar si la Asociación de Residentes poseía capacidad jurídica al momento de solicitar la intervención, no examinaron si la entidad corrigió las deficiencias que originalmente impidieron su certificación. De haber sido inscrita, el certificado de incorporación tendría fecha retroactiva, según lo dispuesto en el Artículo 1.03(F) de la Ley General de Corporaciones.

Tanto A.R.P.E. como el Tribunal de Circuito se limitaron a examinar si la Asociación podía intervenir en los procedimientos al amparo de la doctrina de corporación *de facto*, pero ignoraron las disposiciones del Artículo 1.03(F). Así, no examinaron si la Asociación de Residentes podía ser acreedora de la figura corporativa por virtud del Artículo 1.03(F). Su análisis partió

---

[34] Díaz Olivo, *ob. cit.* a la pág. 43.

de la premisa incorrecta de que la única forma en que se podía ostentar la mencionada figura jurídica, por defectos en el certificado de incorporación, era a través de la doctrina *de facto.*

Sin embargo, la determinación de los foros recurridos, relativa a que la Asociación de Residentes no ostenta capacidad jurídica al amparo de la extinta doctrina de corporación *de facto*, no implica que dicha asociación no pueda intervenir en el procedimiento ante A.R.P.E. si, al amparo del Artículo 1.03(F), oportunamente corrigió los defectos en su certificado de incorporación y se convirtió en una entidad debidamente incorporada. Esto pues, por virtud de dicha corrección, el certificado de incorporación original se entendería corregido desde su fecha de radicación original.

Al así resolver no podemos olvidar que, en el caso particular de autos, el encargado de incorporar a la Asociación de Residentes fue precisamente el presidente de Future Developers, la compañía que ahora es demandada. Además, fue dicha empresa la que fue notificada por el Departamento de Estado de las deficiencias en la incorporación, por lo que era la única que conocía de las deficiencias. Los miembros de la Asociación de Residentes no se enteraron de estos problemas hasta que cuestionaron la consulta de ubicación sometida por el constructor para el desarrollo de unidades adicionales en la urbanización. De hecho, hasta ese momento, según la información incluida en el expediente, la Asociación de Residentes había estado funcionando como una corporación frente a terceros, incluyendo a Future Developers, sin que fuese cuestionada la validez de su incorporación. Permitir que dicha compañía pueda evitar la intervención de los vecinos que cuestionan el desarrollo de otro sector de su urbanización sería premiar al que acudió al foro administrativo con "manos sucias."

En resumen, al examinar la existencia de una corporación, y por ende su personalidad jurídica, no se puede limitar el análisis a considerar la misma al amparo de la doctrina de corporación *de facto* pues ésta figura ha sido eliminada de nuestra jurisdicción. En tal examen, sin embargo, ha de considerarse lo dispuesto en el Artículo 1.03(F) de la Ley General de Corporaciones de 1995.

En vista de ello, concluimos que erraron tanto A.R.P.E. como el Tribunal de Circuito al considerar la doctrina de corporación *de facto,* como el único

mecanismo que tenía a su disposición la Asociación de Residentes para intervenir como persona jurídica en el procedimiento ante A.R.P.E. Por ello, se expide el auto de certiorari y se dicta sentencia en la que revoca el dictamen recurrido.  Se devuelve el caso a la Administración de Reglamentos y Permisos (A.R.P.E.) para que se examine si la Asociación de Residentes puede ostentar capacidad jurídica, en tanto corporación, al amparo del Artículo 1.03(F).

Se dictará la Sentencia correspondiente.


FEDERICO HERNÁNDEZ DENTON
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación de Residentes
Estancias de Cidra

    Demandantes-Recurrentes

       Vs.                                  CC-1998-1017    Certiorari

Future Developers and
Contractors, Inc. Administra-
ción de Reglamentos y Permisos

    Demandado


SENTENCIA


San Juan, Puerto Rico, a 27 de septiembre de 2000.


     Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte integral de la presente, se expide el auto de certiorari y se dicta Sentencia en la que se revoca el dictamen recurrido. Se devuelve el caso a la Administración de Reglamentos y Permisos (A.R.P.E.) para que se examine si la Asociación de Residentes puede ostentar capacidad jurídica, en tanto corporación, al amparo del Artículo 1.03(F).

     Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri concurre sin opinión escrita. El Juez Asociado señor Rebollo López inhibido.


                            Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo