ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| **AGTE. ANDRÉS E. WHITTENBURG GUZMÁN #34455** Recurrido v. **POLICÍA DE PUERTO RICO** Recurrente | KLRA202400662 | **REVISIÓN** procedente de la **Comisión de Investigación, Procesamiento y Apelación** Caso Núm.: **21P-29** Sobre: 10 DSES |
|---|---|---|

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Boria Vizcarrondo, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 28 de enero de 2025.

Comparece ante nos, mediante *Recurso de Revisión Judicial*, el Negociado de la Policía de Puerto Rico (NPPR o Recurrente) y nos solicita que revoquemos la *Resolución* emitida el 17 de septiembre de 2024 por la Comisión de Investigación, Procesamiento y Apelación (CIPA).[1] Mediante la *Resolución*, la CIPA declaró Ha Lugar la *Apelación por Derecho Propio* presentada por el agente Andrés E. Whittenburg Guzmán (Agte. Whittenburg). Dicha determinación revocó la suspensión de diez (10) días de empleo y sueldo impuesta al Agte. Whittenburg y ordenó el pago de salarios y haberes dejados de percibir durante el término que estuvo suspendido hasta su reinstalación.

Por los fundamentos que discutiremos a continuación, revocamos la *Resolución* de la CIPA y devolvemos el caso a la agencia para que continúen los procedimientos conforme lo aquí resuelto.

---

[1] Apéndice de *Recurso de Revisión Judicial*, Anejo VI, págs. 20-22. Notificada y archivada el 27 de septiembre de 2024.

Número Identificador
SEN2025 _____

## I.

El 10 de diciembre de 2019, el NPPR le presentó al Agte. Whittenburg una *Resolución de Cargos*, detallando los hallazgos de una investigación administrativa realizada por el NPPR.[2] Según la investigación administrativa, el NPPR alegó que el 28 de enero de 2015, el Agte. Whittenburg se personó al distrito de Lares, en compañía del agente Edwin Torres Maldonado (Agte. Torres), en relación con una investigación interna que realizaba en contra del agente David Segarra Segarra (Agte. Segarra).

Surge de dicha investigación que, estando en el Precinto de Lares, el Agte. Whittenburg se reunió con el personal del NPPR que se encontraba presente. Durante la referida reunión, el Agte. Whittenburg comunicó abiertamente a personas no autorizadas detalles policiacos de la investigación confidencial que realizaba en contra del Agte. Segarra.

Según la *Resolución de Cargos*, el Agte. Whittenburg manifestó que:

> [E]staba llevando una investigación contra el agente Segarra Segarra, que se encontraba bien adelantada, que el mismo no debería estar en la policía y que solamente estaba esperando la autorización de la fiscal para llevárselo. Que iba a pedir un Subpoena porque la persona del cuartel que llamó a Segarra Segarra para decirle que ellos estaban allí, le iba a someter cargos criminales por obstrucción a la justicia. "Porque tengo un caso sólido con él, entonces él va a mencionar nombres y allí yo voy a empezar a quitar pistolitas y marchitos … que se iba a encargar de rasgarle los parchos del uniforme del mismo y lo iba a meter preso porque era un agente corrupto".[3]

Dichas expresiones fueron realizadas en presencia del teniente Edwin R. Nistal Vargas, sargento César A. Pérez Rosa, sargento José L. Pérez Mercado, agente Carmen M. Méndez Ayala, agente Wilfredo Vega Henchys, agente Grisell Cuevas Rodríguez, agente Jonathan I. González Martínez y Agte. Torres. Estas personas

---

[2] *Íd.*, Anejo I, págs. 6-8.
[3] *Íd.*, pág. 6.

no estaban autorizadas para conocer o recibir información relacionada a la investigación interna en curso. A consecuencia de esto, el NPPR realizó una investigación administrativa hacia la conducta del Agte. Whittenburg. Como parte de la investigación administrativa, el 27 de octubre de 2015, el Agte. Whittenburg prestó una declaración jurada de manera mendaz, en la que negó haber hecho las expresiones señaladas.

Al culminar su investigación, el NPPR concluyó que la conducta del Agte. Whittenburg constituyó violaciones a la Orden General Capítulo 600 Sec. 617, "Código de Ética de la Policía de Puerto Rico", así como una violación al Artículo 14, Sección 14.5, Faltas Graves núm. 1, 9, 14, 18, 19, 27, 34, 36 y 37 del Reglamento de Personal de la Policía de Puerto Rico. En consecuencia, el NPPR resolvió suspender de su empleo al Agte. Whittenburg por ciento veinte (120) días sin sueldo.

El Agte. Whittenburg solicitó una vista informal ante un Oficial Examinador, que fue celebrada el 25 de febrero de 2020. Tras realizar la vista informal, el 13 de julio de 2020, el Comisionado del NPPR, el señor Henry Escalera Rivera, emitió una *Resolución Final*[4] en la que resolvió modificar la sanción disciplinaria anunciada en la *Resolución de Cargos.* Redujo la suspensión de empleo y sueldo de ciento veinte (120) días a diez (10) días.

Inconforme con aquella determinación, el 17 de septiembre de 2020, el Agte. Whittenburg presentó una *Apelación por Derecho Propio* ante la CIPA, en la que cuestionó la *Resolución Final* emitida por el NPPR.[5] El 28 de septiembre de 2020, la CIPA emitió un dictamen ordenando la paralización de los procedimientos, notificada al Agte. Whittenburg y a la licenciada Katherine Cuevas

---

[4] *Íd.*, págs. 10-11.
[5] *Íd.*, págs. 1-5.

Rosa, directora de la Oficina de Asuntos Legales del NPPR.[6] El 30 de septiembre de 2020, la licenciada Álida I. Lara Nieves (Lcda. Lara Nieves), abogada de la Oficina de Asuntos Legales del NPPR, presentó una *Moción Asumiendo Representación Legal*, en la que le informó a la CIPA que le habían asignado el caso.[7]

Así las cosas, el 3 de junio de 2024, la Lcda. Lara Nieves presentó una *Moción Relevo de Representación Legal*, informándole a la CIPA que, a partir del 30 de junio de 2024, no le estaría presentando funciones al NPPR.[8] Señaló que las comunicaciones futuras deberían ser enviadas al licenciado Víctor Maldonado Mercado (Lcdo. Maldonado Mercado), director interino de la Oficina de Asuntos Legales del NPPR. En consecuencia, el 9 de julio de 2024, la CIPA emitió una *Orden* en la que autorizó la renuncia de la Lcda. Lara Nieves y le concedió al NPPR treinta (30) días para que anunciara su nueva representación legal.

El 17 de septiembre de 2024, notificada el 27 de septiembre de 2024, la CIPA emitió una *Resolución* declarando Ha Lugar la *Apelación por Derecho Propio*.[9] La *Resolución*, sin el beneficio de la comparecencia del NPPR, ni realizar una determinación de hechos o conclusiones de derecho, dispone que:

> Ante el incumplimiento de la parte apelada con [la] orden previa dictada por esta Comisión[,] se declara **Ha Lugar** la apelación y se **revoca** la suspensión de empleo y sueldo por 10 días impuesta al apelante. Se ordena el pago de salarios y haberes dejados de percibir durante el término que el apelante estuvo suspendido hasta su reinstalación.[10]

El 9 de octubre de 2024, el NPPR presentó una *Moción en Cumplimiento de Orden, Asumiendo Representación Legal y Solicitud de Prórroga* y solicitó un término de treinta (30) días para contestar la *Apelación por Derecho Propio* e informar que el licenciado Orlando

---

[6] *Íd.*, Anejo II, págs. 12-14.
[7] *Íd.*, Anejo III, págs. 15.
[8] *Íd.*, Anejo IV, págs. 16-17.
[9] *Íd.*, Anejo VI, págs. 21-22.
[10] *Íd.*, pág. 21. (Énfasis en la original).

Maldonado Serrano (Lcdo. Maldonado Serrano) había sido asignado al caso.[11] Posteriormente, el 15 de octubre de 2024, el NPPR presentó una *Moción en Reconsideración de Resolución y/o Solicitud de Relevo de Resolución* (*Moción de Reconsideración*).[12]

En la *Moción de Reconsideración*, el NPPR señaló que su falta de comparecencia tras la *Orden* del 9 de julio de 2024 fue debido a desperfectos operacionales del aire acondicionado del Piso 9 del Cuartel General del NPPR, piso en el que se encontraba la Oficina de Asuntos Legales del NPPR.[13] Dichos desperfectos se habían reportado desde el 29 de julio de 2024.[14] Debido a la avería del aire acondicionado, el 29 de agosto de 2024, el Lcdo. Maldonado Mercado ordenó la reubicación de la Oficina de Asuntos Legales al Piso 2 del Cuartel General.[15] En consecuencia, solicitó que se le relevara de la *Resolución* del 17 de septiembre de 2024 y le permitiera al NPPR presentar su contestación a la *Apelación por Derecho Propio.* No obstante, el 22 de octubre de 2024, la CIPA la declaró No Ha Lugar.

Inconforme, el 2 de diciembre de 2024, el NPPR presentó el *Recurso de Revisión Judicial* ante nuestra consideración. En la referida comparecencia, el NPPR presentó el siguiente señalamiento de error:

> **ERRÓ Y ABUSÓ DE SU DISCRECIÓN LA HONORABLE COMISIÓN DE INVESTIGACIÓN, PROCESAMIENTO Y APELACIÓN (CIPA) AL DECLARAR "HA LUGAR" LA *APELACIÓN* PRESENTADA POR LA PARTE RECURRIDA, COMO SANCIÓN CONTRA EL NPPR POR NO ANUNCIAR NUEVA REPRESENTACIÓN LEGAL EN EL TÉRMINO CONCEDIDO, A PESAR DE QUE FUE EL PRIMER INCUMPLIMIENTO Y QUE NO IMPUSO MEDIDAS MENOS DRÁSTICAS PREVIO A DICHA DECISIÓN, DE FORMA CONTRARIA A LA REGLAMENTACIÓN APLICABLE.**

---

[11] *Íd.*, Anejo VII, pág. 23.
[12] *Íd.*, Anejo VIII, págs. 24-27.
[13] *Íd.*, pág. 24.
[14] *Íd.*, pág. 26.
[15] *Íd.*, pág. 27.

El 5 de diciembre de 2024, este Tribunal emitió una *Resolución* ordenándole a la parte recurrida, el Agte. Whittenburg, a que presentase su alegato dentro del término de treinta (30) días a partir de la notificación de la *Resolución.* Transcurrido dicho término sin la comparecencia de la parte recurrida, procedemos a resolver sin el beneficio de su postura.

**II.**

**A.**

La CIPA, creada mediante la aprobación de la Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 LPRA sec. 171 *et seq.*, es el cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos cubiertos por la misma. *Íd.*, Artículo 2 (2). El Artículo 10 de la Ley Núm. 32 dispone que la CIPA adoptará los reglamentos necesarios para la realización efectiva de sus funciones, de conformidad con lo dispuesto en la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.* (LPAU), los cuales incluirán reglas sobre procedimientos de formulación de cargos y apelaciones. La LPAU, por su parte, es la ley aprobada por el Gobierno de Puerto Rico que tiene como propósito crear un procedimiento uniforme de revisión judicial a la acción tomada por una agencia de Gobierno al adoptar un reglamento o al adjudicar un caso. *Íd.*, Exposición de Motivos.

La LPAU, que regula los procedimientos administrativos y las adjudicaciones que realiza la CIPA, le exige a las agencias una serie de requisitos al momento que estas emitan una resolución final. La Sección 3.14 de la LPAU dispone el deber de las agencias de "incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso" en la resolución final. *Íd.*, Sección 3.14.

Dicho requisito surge de la necesidad de "conocer qué significa una decisión antes de que sea nuestra obligación resolver si es correcta o errada". *Rivera Santiago v. Secretario de Hacienda,* 119 DPR 265, 276 (1987). Nos dice el tratadista Javier A. Echevarría Vargas que:

> (J) [P]roporcionar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo, y estando ésta mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad interagencial, particularmente cuando el proceso decisorio institucional es adoptado por distintos miembros del comité especial a quien les está encomendado celebrar vistas y recibir prueba; y, (5) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza (expertise).
>
> J.A. Echevarría Vargas, *Derecho administrativo puertorriqueño,* 5ª ed. rev., San Juan, Ed. SITUM, 2023, págs. 251-252.

El requisito de realizar una determinación de hechos y conclusiones de derecho es uno de nivel constitucional, ya que forma parte del debido proceso de ley garantizado a todas las partes en un proceso administrativo. La falta de una determinación de hechos y/o conclusiones de hechos es causa suficiente para revocar una determinación administrativa y devolvérsela a la agencia para que cumpla con su deber. *Rivera Santiago v. Secretario de Hacienda, supra.*

### B.

Por otro lado, como norma general, las Reglas de Procedimiento Civil, 32 LPRA Ap. V, no aplican de manera automática a los procedimientos administrativos. *Otero v. Toyota,* 163 DPR 716 (2005). No obstante, "nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del procedimiento administrativo, cuando las mismas no sean incompatibles con dicho proceso y propicien una

solución justa, rápida y económica". *Industria Cortinera, Inc. v. P.R. Telephone Co.*, 132 DPR 654, 660 (1993).

En el proceso judicial ordinario, la Regla 49.2 de Procedimiento Civil permite que un tribunal releve a una parte de una sentencia, orden o resolución por, entre otras razones, error, inadvertencia, sorpresa o negligencia excusable. *Íd.* Sobre el uso de este mecanismo procesal en el ámbito administrativo, el Tribunal Supremo ha resuelto que "si es considerado justo y razonable aplicarlo a las sentencias dictadas por un tribunal, todavía más razonable resulta el aplicarlo a los organismos administrativos que son creados precisamente para funcionar sin la rigidez que muchas veces caracteriza a los tribunales". *Vega v. Emp. Tito Castro, Inc.*, 152 DPR 72, 87 (2000). Es menester señalar que al aplicar la Regla 49.2 de Procedimiento Civil a los procesos administrativos, las agencias deberán interpretar su uso según se ha utilizado en los tribunales.

> Al momento de evaluar la procedencia de una moción de relevo de sentencia, el tribunal tiene el deber de tomar en consideración ciertos criterios inherentes de la Regla 49.2 de Procedimiento Civil, entre éstos: si el peticionario tiene una buena defensa en sus méritos; el tiempo que media entre la sentencia y la solicitud del relevo, y el grado de perjuicio que pueda ocasionar a la otra parte la concesión del relevo de sentencia.

*Reyes v. E.L.A. et al.*, 155 DPR 799, 809-810 (2001).

Al tribunal se le reconoce amplia discreción en el examen sobre la procedencia de una solicitud de relevo de sentencia, disponiéndose que este mecanismo debe interpretarse de forma amplia y liberal a favor del peticionario. *Díaz v. Tribunal Superior*, 93 DPR 79 (1966).

Ahora bien, lo que constituye error, inadvertencia, sorpresa o negligencia excusable depende de caso a caso. En primer lugar, "[e]l error como fundamento para la moción de relevo debe ser un error de la parte promovente o de la parte adversa o del juez, pero ha de

ser un error extrínseco a la sentencia u orden[...]". R. Hernández Colón, *Práctica jurídica de Puerto Rico: Derecho procesal civil*, 6ª ed. rev., San Juan, LexisNexis de Puerto Rico, 2017, pág. 455. Por otro lado, la inadvertencia, sorpresa o negligencia excusable trata de aquellas situaciones en las que no se ha cometido alguna negligencia crasa. Por lo tanto, es importante que la parte que solicite el relevo de sentencia por una de las razones señaladas, debiendo demostrar, mediante la preponderancia de la prueba, los hechos que justifican la petición, así como establecer una defensa meritoria. *García Colón et al. v. Sucn. González*, 178 PR 527 (2010).

### C.

Finalmente, el 1 de diciembre de 2010, la CIPA aprobó el Reglamento Para La Presentación, Investigación y Adjudicación De Querellas Y Apelaciones Ante La Comisión De Investigación, Procesamiento y Apelación, Reglamento Núm. 7952 (Reglamento CIPA). El referido reglamento, aprobado en virtud de la Ley Núm. 32 y de la LPAU, dispone que el mismo aplicará en todos los procedimientos investigativos y adjudicativos que se ventilen en la CIPA. *Íd.*, Artículo 3.

El Reglamento CIPA contiene una serie de sanciones que la entidad podrá imponerle a las partes por incumplimientos procesales. Esto incluye decretar la rebeldía de una parte (*Íd.*, Artículo 24), multas (*Íd.*, Artículo 29) y la desestimación o disposición sumaria del caso (*Íd.*, Artículo 26). La imposición de sanciones debe estar regida por el principio de disciplina progresiva, por lo que se debe emitir una orden de mostrar causa y de sanciones menos severas antes de proceder a la imposición de las sanciones más severas. J.A. Echevarría Vargas, *op. cit.*, pág. 292.

Según el propio Reglamento CIPA, *supra*, cuando una parte no obedezca las órdenes de la CIPA, procederá que se le decrete la rebeldía. Decretar la rebeldía tendrá la consecuencia de que se le

elimine sus alegaciones y que se continúen los procedimientos sin su participación. *Íd.*, Artículo 24. Por otro lado, el Reglamento CIPA permite que la CIPA disponga del caso sumariamente **únicamente** cuando no haya controversia de hechos **y proceda el remedio como cuestión de derecho**. *Íd.*, Artículo 26. Por lo tanto, no constituye una razón para la disposición sumaria en contra de una de las partes que aquella parte no haya comparecido o acatado las órdenes del organismo administrativo. **Toda determinación final debe estar fundamentada por un análisis del derecho según los hechos probados** y nunca como resultado de una sanción.

### III.

Tras una evaluación completa del caso, es evidente que la CIPA abusó de su discreción al emitir una *Resolución* sin unas determinaciones de hechos o conclusiones de derecho para fundamentar su decisión a favor del Agte. Whittenburg. La *Resolución* señala como **único** fundamento para su determinación que el NPPR ha incumplido con una orden de la entidad. Por otro lado, también erró la CIPA al no relevar al NPPR de su determinación, tras este presentar una *Moción de Reconsideración* en la que presentó justa causa por su incomparecencia.

Como hemos señalado, la falta de unas determinaciones de hechos y conclusiones de derechos constituye una violación al debido proceso de ley que vicia fatalmente la validez de aquella determinación. En resumidas cuentas, la *Resolución* de la CIPA resuelve a favor del Agte. Whittenburg sin precisar los fundamentos en derecho para aquella determinación. Dicha conducta contraviene lo dispuesto en la Sección 3.14 de la LPAU, *supra*, y nos obliga a concluir que la determinación fue arbitraria y caprichosa.

Esta conclusión queda aún más viciada por el único fundamento dado por la CIPA: que el NPPR no haya anunciado su representación legal dentro del término dispuesto. Si bien es cierto

que el NPPR incumplió con una orden de la CIPA, esto por sí no justifica la resolución de la controversia en su contra. El mismo Reglamento CIPA dispone que las determinaciones en contra de una parte, esté en rebeldía o no, deben estar fundamentadas por las conclusiones de derecho que proceden. De una lectura de la *Resolución* surge con completa claridad que la misma es nula *ab initio* al no contener los fundamentos adecuados para sostener el remedio concedido.

Por otro lado, aun la CIPA habiendo esbozado sus determinaciones de hechos y conclusiones de derecho, la entidad erró al no relevar al NPPR de la *Resolución* y permitir que éste presentara su alegato. Luego de emitir su *Resolución,* el NPPR presentó, oportunamente, una *Moción de Reconsideración.* En la misma alegó que, aunque incumplió con la *Orden* de la CIPA, esto se debió a una inadvertencia o negligencia excusable. No estamos ante la desatención del abogado de la parte recurrente, sino ante unos factores que estaban fuera de su control.

Anejado a la *Moción de Reconsideración,* la parte recurrente incluyó una serie de avisos e instrucciones de sus superiores, informando un problema con la unidad de aire acondicionado en el Piso 9 del Cuartel General y el eventual desalojamiento del piso. Esto resultó en que la Oficina de Asuntos Legales del NPPR fuese trasladada al Piso 2 del Cuartel General. Es excusable que, como consecuencia de aquel traslado y movimiento, se hayan obviado o colocado fuera de lugar los documentos del caso. Tomando en consideración lo anterior, consideramos que esto constituye la inadvertencia o negligencia excusable necesaria para conceder el relevo de sentencia al amparo de la Regla 49.2 de Procedimiento Civil, *supra,* R. 49.2.

Por las razones discutidas, resolvemos que se cometió el error señalado por el NPPR. No solamente revocamos la *Resolución* por

incumplir con la Sección 3.14 de la LPAU, *supra,* sino también determinamos que la CIPA erró al no permitir que el NPPR anunciara su nueva representación legal y permitiera que esta presentase un alegato responsivo. En consecuencia, se devuelve el caso a la CIPA para que el NPPR presente su alegato y la CIPA resuelva conforme a derecho.

**IV.**

Por las razones discutidas anteriormente, revocamos la *Resolución* de la CIPA y devolvemos el caso a la CIPA para que se continúen los procedimientos conforme lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones