WESTERN MACHINE WORKS ET AL. *v.*
EDWARDS MACHINE & TOOL CORPORATION ET AL.

[No. 28,123.    Filed November 15, 1945.    Rehearing Denied
December 7, 1945.]

*Frank C. Olive,* of Indianapolis, and *Emerson J. Brunner,* of Shelbyville, for appellants.

*Emmert & Adams,* of Shelbyville, and *Fenton, Steers, Beasley & Klee,* of Indianapolis, for appellees.

STARR, J.—This is an appeal from an interluctory order overruling a motion to dissolve a temporary injunction.

The appellees having filed a motion to dismiss this appeal on the grounds: first, that the record does not show an interlocutory order from which an appeal can be prosecuted; and second, that the grounds set up in said motion to dissolve are the same as those which were previously pleaded in appellants' answer in abatement to the complaint of appellee company, to which answer a demurrer had been sustained prior to the filing of said motion to dissolve.

The record does not disclose that the trial court over-

ruled appellants' motion to dissolve said temporary injunction, but does show that appellee company filed a motion to strike out and reject appellants' said motion to dissolve, which motion to strike was sustained by the court. It is this action of the court from which the appellants are now appealing.

It has been held by this court that, although a motion to strike out a motion is not proper, if such motion is entertained and sustained, it is equivalent to the overruling of the first motion, and such action will be considered the same as the overruling of the motion instead of striking it out. *Blemel* v. *Shattuck* (1892), 133 Ind. 498, 33 N. E. 277; *Long* v. *Ruch* (1897), 148 Ind. 74, 47 N. E. 156. In the case before us the appellants have assigned as error the action of the court in striking out the motion of appellee company to dissolve said temporary injunction and the overruling of said appellees' motion to dissolve the temporary injunction.

The appellants filed an answer in abatement to appellee company's complaint setting out the same facts as grounds for said answer in abatement as they set out in their said motion to dissolve the temporary injunction. Appellee company demurred to said answer in abatement on the ground that the same did not state facts sufficient to abate the action, which demurrer was sustained at a time prior to the filing of appellants' said motion to strike. It is our opinion that the filing of said demurrer and a ruling thereon favorable to said appellee, did not bar the appellants from filing and having considered said motion to dissolve said temporary injunction.

In any appeal from a final judgment against appellants in this cause, they could properly assign as error, the ruling on said demurrer. The ruling on this de-

murrer is no reason why the appellants should be denied the right to set up any ground which they have, or think they have, in their said motion to dissolve. We are of the opinion that appellants' assignment of error is proper to question the ruling complained of, and the appellees' motion to dismiss said appeal is overruled.

Appellees in their answer brief contend that appellants' brief does not present any question for review because of their failure to comply with the requirements of Rule 2-17 (f) of this court. We are of the opinion that there has been a good-faith effort by the appellants to so comply and have had no trouble in finding out from said brief the exact question which said brief attempts to raise and the reasons put forward by the appellants for reversal of this cause. We will therefore proceed to consider this cause on its merits.

Appellee, Edwards Machine & Tool Corporation, filed its verified complaint herein, as assignee of a certain lease, alleging that it is a corporation duly organized and existing under the laws of the State of Indiana; that the appellee, Walter H. Edwards, was made a defendant to said action to answer to any interest which he might have as the assignor of this lease upon which this action is based; that said lease was executed by the said Western Machine Works, as lessor, whose principal stockholder was the appellant, George Malott. Among its other terms, said lease, which was in writing and in the form of an accepted proposal contained the following provisions:

"As part of this proposal it is distinctly agreed and understood that this proposal is contingent upon my forming a corporation to carry out the purposes of this proposal, and when such corporation has been duly organized, this proposal, if accepted by you, shall be assigned to such new cor-

poration and you are to consent to the assignment of this proposal to it, in which event I shall be relieved of any liability or responsibility hereunder."

Said complaint also alleged that said Edwards did cause a corporation to be formed as provided by said lease, and assigned said lease to it, which corporation is the plaintiff; that said corporation is duly qualified under the laws of the State of Indiana to carry out the purposes of said lease, and is now the owner thereof and entitled to all the rights and provisions thereunder; that the defendants are wrongfully interfering with plaintiffs' enjoyment and possession of the leased property. Said complaint, among other things, prays that defendants be restrained and enjoined from interfering with the business of the plaintiffs and the free and uninterrupted use of the premises so leased.

The record shows that shortly after the commencement of this action, the temporary injunction was granted enjoining appellants substantially, as prayed for in said complaint.

The facts set out in appellants' motion to dissolve this order are substantially these: the appellee company duly filed its Articles of Incorporation with the Secretary of State of the State of Indiana on June 22, 1942, which Articles provided that the amount of paid-in capital with which the corporation would begin business was $2,500; that an approved copy thereof was filed in the office of the Recorder of Marion County upon the same day along with an affidavit on paid-in capital wherein the incorporators stated that the sum of $2,500 had been fully paid in; that in fact on said date said sum was not fully paid in and was not fully paid to said corporation until after the commencement of this suit, to-wit, on June 30, 1943; that by reason of the facts aforesaid, the said corporation was prevented from trans-

acting any business or incurring any indebtedness except such as would be incidental to its organization or obtaining subscription to or payment for its capital stock; and particularly was said corporation prohibited from taking over by assignment or otherwise from the said defendant Edwards, or from carrying out or performing the lease contract and from entering into any contract to do or perform work for others as § 25-219, Burns' 1933, prohibits said company from doing such business until such time as the said capital was fully paid, to-wit, June 30, 1943; and that by reason of the said prohibition, said company was not empowered to request the court to make such order of injunction.

In order to decide this cause it is necessary to determine whether it was the intent of the legislature, in drafting the Domestic Corporation Act, to give the appellants the right to make this attack upon the appellee corporation for failure to pay in the required amount of capital, or whether the legislature intended that such failure should merely be grounds for a proceedings to be instituted by the State to dissolve, wind up and terminate said corporation.

The pertinent sections of our Domestic Corporation Act under which the appellee company was formed are are as follows:

Section 25-216, Burns' 1933, provides, that among the other matters to be set out in the articles of association on forming a corporation shall be "The amount of paid-in capital with which it will begin business which shall be not less than five hundred dollars ($500)";

Section 25-217, provides for the filing of the articles of incorporation in the office of the Secretary of State and the issuance of a certificate of incorporation to the incorporators.

Section 25-218, provides, "That upon the issuance of the certificate of incorporation by the secretary of state, the corporate existence shall begin, all subscriptions to shares of capital stock theretofore received by the incorporators shall be deemed accepted by the corporation and the subscribers for such shares, or their assigns, shall be deemed to be shareholders of the corporation. The certificate of incorporation issued by the secretary of state shall be conclusive evidence of the fact that the corporation has been incorporated; but proceedings may be instituted by the state to dissolve, wind up and terminate a corporation which should not have been formed under this act or which has begun business without a substantial compliance with the conditions prescribed by this act as precedent to beginning business."

Section 25-219, provides, among other things that, "A corporation formed under this act shall not transact any business or incur any indebtedness, except such as shall be incidental to its organization or to obtaining subscriptions to or payment for shares of its capital stock, until: . . . (b) The amount of paid-in capital with which it will begin business, as stated in the articles of incorporation, has been fully paid in"; Said section further provides that, "If a corporation transacts any business or incurs any indebtedness in violation of this section, the officers who participated therein and the directors, . . . shall be severally liable for the debts or liabilities of the corporation so incurred or arising therefrom." In construing the different sections of the statute the entire act is to be considered in order to arrive at the legislative intent. *Wysong* v. *Automobile Underwriters, Inc.* (1932), 204 Ind. 493, 184 N. E. 783; *Nash, Trustee* v. *State ex rel. Adams* (1933), 205 Ind. 22, 184 N. E. 169;

*Zoercher* v. *Indiana Associated Telephone Corp.* (1937), 211 Ind. 447, 7 N. E. (2d) 282.

It will be noted that said § 25-218 specifically refers to conditions necessary to be performed in order to constitute a corporation and also conditions precedent to beginning business. Clearly the phrase "conditions prescribed by this act as precedent to beginning business" is referring to those conditions set out in said § 25-219. Furthermore, § 25-219 also provides that the officers and directors who participate in such business or incur such indebtedness shall be personally liable. This would also indicate that the conditions set out in said section are conditions subsequent to the organization of a corporation and are conditions precedent as to doing business only, for if they were conditions necessary to be performed in order to bring the corporation into existence, then their failure to be so performed would cause said officers and directors to be personally liable without any such express provision. *Coleman* v. *Coleman* (1881), 78 Ind. 344. From an examination of the foregoing sections, it is our opinion that by said § 25-218 a *de jure* corporation comes into existence when the certificate of incorporation has been issued by the Secretary of State. This being true, all citations of authority as to *de facto* corporations, have no bearing on the question before us, nor is there any question of estoppel involved in this case as the record discloses that the appellants have not had any dealing whatsoever with the appellee company. The conditions set forth in said § 25-219 are merely conditions precedent to beginning business and have nothing to do with the organization necessary to be carried out in order to make the appellant company a *de jure* corporation.

Said § 25-218 indicates that such corporation might begin business before performing any one of these con-

ditions precedent, and that such action, if it occurs, may be questioned by the State, but no mention is made of the right of an individual to question such a performance. Again said § 25-219, among other things, provides that, "If a corporation transacts any business or incurs any indebtedness in violation of this section, . . ." From this statement it would seem that such corporation may transact business or incur indebtedness.

Appellants seem to rely upon the case of *Sterne* v. *Fletcher American Co.* (1932), 204 Ind. 35, 181 N. E. 37, wherein the plaintiffs were allowed to attack collaterally a corporation which was organized under the Corporation Act of 1921, Acts 1921, ch. 35, on the ground that said corporation had not complied with § 19 of said Act which reads as follows:

"Every corporation shall, before beginning business, file with the county recorder a copy of its articles of incorporation approved by the Secretary of State. It shall have no rights or privileges as a corporation until it has complied with this requirement, and until one-fourth of its stock has been subscribed and one-fourth of the subscription price paid into the treasury of the corporation. . . ."

This court held in that case that this section was a condition precedent to corporate existence; that by the failure of the company to sell one-fourth of its authorized capital stock it "never became vested with any corporate life," and was an incomplete corporation, and, that the failure to so sell said stock went to one of the essential elements of a corporation, and it did not become a corporation with power or authority to execute the contract in question.

There is a vast difference between the Corporation Act of 1921 and the act under which the appellee com-

pany was organized. Nowhere in said Acts of 1921 were there provisions similar to those contained in said sections, above set out, of the act under which the appellee company was incorporated. For a similar conclusion, as was reached in *Sterne* v. *Fletcher American Co., supra,* see *Realty Company, Limited* v. *Whitney* (1901), 106 La. 257, 30 So. 745, wherein it was held that the condition prior to doing business of paying the capital stock as required by the Louisiana statutes was a condition precedent to the existence of the appellant company. So also *McCormick* v. *Market Bank* (1897), 165 U. S. 538, 41 L. Ed. 817, 17 Sup. Ct. 433, which held that under the statute requiring the authorization of the comptroller of the currency before a corporation could transact any business except such as was preliminary to its organization, was a condition "upon which, by the very terms of the National Bank Act depend the right of the association to exist as a corporation, and its capacity to transact business."

Where the statute provides a condition precedent to a corporation doing business, to entitle an individual to make a collateral attack for the breach of such condition, such right must be conferred by an express statutory declaration to that effect. ". . . where a statute, in however mandatory terms, requires certain acts to be done after the attainment of corporate existence, failure to comply with that requirement will be merely a cause of forfeiture, which, according to well-known principles, in the absence of an express and emphatic statutory declaration to the contrary, can be taken advantage of only by the state on a direct proceeding instituted for that purpose." Machen's Modern Law of Corporations § 265. We think the foregoing quotation contains a correct statement of the law in this matter.

In the case of *Wells Company* v. *Gastonia Co.* (1905), 198 U. S. 177, 49 L. Ed. 1003, 25 Sup. Ct. 640, wherein, the right of the plaintiff corporation to bring suit was questioned, it appeared that the plaintiff was incorporated by a charter from the State of Mississippi, which charter provided that the plaintiff would have corporate existence for a definite period, should have power to sue and be sued, contract and be contracted with, and have a corporate seal. Said charter after granting such powers further provided the amount of capital stock of said company, and that, "As soon as $10,000 of said stock is subscribed and paid for, said corporation shall have power to commence business." In construing this charter, the court said:

"If the commencing of the business for which it was incorporated before a certain amount of capital stock was subscribed and paid for was in violation of the company's charter, that was a matter for which it could be called to account by the state, and did not affect the existence in law of the company as a corporation. Of course, if the charter of the company had made it a *condition* precedent to its becoming a corporation that a certain amount of capital stock should be subscribed and paid for, a compliance with that condition would have been necessary before the company would have become a corporation entitled to sue and be sued in the courts of the United States. But, as we have seen, the charter in question prescribed no such condition. If the legislature had intended to withhold corporate existence until a given amount of capital stock was subscribed and paid for, that intention, we may assume, would have been manifested by clear language. We do not feel at liberty, by mere construction, to qualify the explicit declaration in the 1st section of plaintiff's charter as to the corporate existence thereby created."

See also *Oliver* v. *Home Service Ice Co.* (1935), 161 So. 766; *Temple Enterprises* v. *Combs* (1940), 164 Or. 133,

100 P. (2d) 613; *Chase's Patent Elevator Co.* v. *Boston Tow-Boat Co.* (1890), 152 Mass. 428, 28 N. E. 300.

Judgment Affirmed.

Note.—Reported in 63 N. E. (2d) 535.