Martin G. ROBERTSON, Appellant,

v.

Eugene M. LEVY, Appellee.

No. 3343.

District of Columbia Court of Appeals.

Argued Nov. 12, 1963.

Decided Feb. 18, 1964.

Martin S. Becker, Washington, D. C., with whom Morris D. Schwartz, Washington, D. C., was on the brief, for appellant.

Aubrey E. Robinson, Jr., Harvey Rosenberg and Daniel I. Sherry, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge.

On December 22, 1961, Martin G. Robertson and Eugene M. Levy entered into an agreement whereby Levy was to form

a corporation, Penn Ave. Record Shack, Inc., which was to purchase Robertson's business. Levy submitted articles of incorporation to the Superintendent of Corporations on December 27, 1961, but no certificate of incorporation was issued at this time. Pursuant to the contract an assignment of lease was entered into on December 31, 1961, between Robertson and Levy, the latter acting as president of Penn Ave. Record Shack, Inc. On January 2, 1962, the articles of incorporation were rejected by the Superintendent of Corporations but on the same day Levy began to operate the business under the name Penn Ave. Record Shack, Inc. Robertson executed a bill of sale to Penn Ave. Record Shack, Inc. on January 8, 1962, disposing of the assets of his business to that "corporation" and receiving in return a note providing for installment payments signed "Penn Ave. Record Shack, Inc. by Eugene M. Levy, President." The certificate of incorporation was issued on January 17, 1962. One payment was made on the note. The exact date when the payment was made cannot be clearly determined from the record, but presumably it was made after the certificate of incorporation was issued. Penn Ave. Record Shack, Inc. ceased doing business in June 1962 and is presently without assets. Robertson sued Levy for the balance due on the note as well as for additional expenses incurred in settling the lease arrangement with the original lessor. In holding for the defendant the trial court found that Code 1961, 29–950, relied upon by Robertson, did not apply and further that Robertson was estopped to deny the existence of the corporation.

The case presents the following issues on appeal: Whether the president of an "association" which filed its articles of incorporation, which were first rejected but later accepted, can be held personally liable on an obligation entered into by the "association" before the certificate of incorporation has been issued, or whether the creditor is "estopped" from denying the existence of the "corporation" because, after the certificate of incorporation was issued, he accepted the first installment payment on the note.

The Business Corporation Act of the District of Columbia, Code 1961, Title 29, is patterned after the Model Business Corporation Act which is largely based on the Illinois Business Corporation Act of 1933.[1] On this appeal, we are concerned with an interpretation of sections 29–921c and 29–950 of our act. Several states have substantially enacted the Model Act, but only a few have enacted both sections similar to those under consideration.[2] A search of the case law in each of these jurisdictions, as well as in our own jurisdiction, convinces us that these particular sections of the corporation acts have never been the subject of a reported decision.

For a full understanding of the problems raised, some historical grounding is not only illuminative but necessary. In early common law times private corporations were looked upon with distrust and disfavor. This distrust of the corporate form for private enterprise was eventually overcome by the enactment of statutes which set forth certain prerequisites before the status was achieved, and by court decisions which eliminated other stumbling blocks.[3] Problems soon arose, however, where there was substantial compliance with the prerequisites of the statute, but not complete formal compliance. Thus the concepts of de jure corporations, de facto corporations,

1. 21 J.B.A.D.C. 499, 500 (1954).

2. Alaska Comp.L.Ann. §§ 36–2A–64, 36–2A–210; Colo.Corp.Act §§ 52, 140, Laws 1958, c. 32; Ill.Rev.Stat. ch. 32, §§ 157.-49, 157.150; Iowa Code Ann. §§ 496A.51, 496A.141; N.D.Rev.Code §§ 10–1923, 10–1955; Ore.Rev.Stat. §§ 57.321, 57.793; Utah Code Ann. §§ 16–10–51, 16–10–139; Wyo.Stat. §§ 17–36.48, 17–36.122.

3. Trustees of Dartmouth College v. Woodward, 4 Wheat. (17 U.S.) 518, 4 L.Ed. 629 (1819); Head & Amory v. Providence Ins. Co., 2 Cranch (6 U.S.) 127, 2 L.Ed. 229 (1804).

and of "corporations by estoppel" came into being.

Taking each of these in turn, a de jure corporation results when there has been conformity with the mandatory conditions precedent (as opposed to merely directive conditions) established by the statute. A de jure corporation is not subject to direct or collateral attack either by the state in a *quo warranto* proceeding or by any other person.

A de facto corporation is one which has been defectively incorporated and thus is not de jure. The Supreme Court has stated that the requisites for a corporation de facto are: (1) A valid law under which such a corporation can be lawfully organized; (2) An attempt to organize thereunder; (3) Actual user of the corporate franchise.[4] Good faith in claiming to be and in doing business as a corporation is often added as a further condition.[5] A de facto corporation is recognized for all purposes except where there is a direct attack by the state in a *quo warranto* proceeding. The concept of de facto corporation has been roundly criticized.[6]

Cases continued to arise, however, where the corporation was not de jure, where it was not de facto because of failure to comply with one of the four requirements above, but where the courts, lacking some clear standard or guideline, were willing to decide on the equities of the case. Thus another concept arose, the so-called "corporation by estoppel." This term was a complete misnomer. There was no corporation, the acts of the associates having failed even to colorably fulfill the statutory requirements; there was no estoppel in the pure sense of the word because generally there was no holding out followed by reliance on the part of the other party. Apparently estoppel can arise whether or not a de facto corporation has come into existence.[7] Estoppel problems arose where the certificate of incorporation had been issued as well as where it had not been issued, and under the following general conditions: where the "association" sues a third party and the third party is estopped from denying that the plaintiff is a corporation;[8] where a third party sues the "association" as a corporation and the "association" is precluded from denying that it was a corporation;[9] where a third party sues the "association" and the members of that association cannot deny its existence as a corporation where they participated in holding it out as a corporation;[10] where a third party sues the individuals behind the "association" but is estopped from denying the existence of the "corporation";[11] where either a third party, or the "associa-

4. Tulare Irrigation District v. Shepard, 185 U.S. 1, 13, 22 S.Ct. 531, 46 L.Ed. 773 (1902).

5. Ballantine, Corporations § 24 (1946); 8 Fletcher, Cyclopedia of Corporations §§ 3759–3888; Lattin, Corporations, pp. 158–166 (1959).

6. Ballantine § 20 ("a baffling and discouraging maze."); Stevens, Corporations, pp. 135–6 (1949) ("inaccurate and confusing,"); Frey, Legal Analysis and the De Facto Doctrine, 100 U.Pa.L.Rev. 1153, 1180 (1952) ("legal conceptualism at its worst,").

7. See 8 Fletcher § 3902 and cases cited therein; contra, Harrill v. Davis, 168 F. 187, 22 L.R.A.,N.S., 1153 (8 Cir. 1909).

8. Lowell-Woodward Hardware Co. v. Woods, 104 Kan. 729, 180 P. 734 (1919); Brandtjen & Kluge, Inc. v. Biggs, 205 Or. 473, 288 P.2d 1025, 51 A.L.R.2d 1435 (1955); 8 Fletcher § 3910.

9. Empire Manuf'g Co. v. Stuart, 46 Mich. 482, 9 N.W. 527 (1881); Allen v. Rhodes, 230 F. 321 (8 Cir. 1916); 8 Fletcher § 3930.

10. Benton-Bauxite Housing Co-op. v. Benton Plumbing, Inc., 228 Ark. 798, 310 S.W.2d 483 (1958); Cavaness v. General Corp., 272 S.W.2d 595 (Tex.Civ.App. 1954), aff'd 155 Tex. 69, 283 S.W.2d 33 (1955); 8 Fletcher § 3938.

11. See cases cited in Frey, footnote 6 above at p. 1158, note 22.

tion" is estopped from denying the corporate existence because of prior pleadings.[12]

One of the reasons for enacting modern corporation statutes was to eliminate problems inherent in the de jure, de facto and estoppel concepts. Thus sections 29–921c and 950 were enacted as follows:

"§ 29–921c. Effect of issuance of incorporation.

"Upon the issuance of the certificate of incorporation, the corporate existence shall begin, and such certificate of incorporation shall be conclusive evidence that all conditions precedent required to be performed by the incorporators have been complied with and that the corporation has been incorporated under this chapter, except as against the District of Columbia in a proceeding to cancel or revoke the certificate of incorporation."

"§ 29–950. Unauthorized assumption of corporate powers.

"All persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for all debts and liabilities incurred or arising as a result thereof."

■ The first portion of section 29–921c sets forth a *sine qua non* regarding compliance. No longer must the courts inquire into the equities of a case to determine whether there has been "colorable compliance" with the statute. The corporation comes into existence only when the certificate has been issued. Before the certificate issues, there is no corporation de jure, de facto or by estoppel. After the certificate is issued under section 921c, the de jure corporate existence commences. Only after such existence has begun can the cor-

poration commence business through compliance with section 29–921d, by paying into the corporation the minimum capital, and with section 921a(f), which requires that the capitalization be no less than $1,-000.[13] These latter two sections are given further force and effect by section 29–918 (a) (2) which declares that directors of a corporation are jointly and severally liable for any assets distributed or any dividends paid to shareholders which renders the corporation insolvent or reduces its net assets below its stated capital. (See also, Code 1961, § 29–917).

The authorities which have considered the problem are unanimous in their belief that section 29–921c (similar to Ill.Corp. Act § 157.49 and Model Business Corporation Act § 50) and section 29–950 (similar to Ill.Corp.Act § 157.150 and Model Business Corporation Act § 139), have put to rest de facto corporations and corporations by estoppel. Thus the Comment to section 50 of the Model Act, after noting that de jure incorporation is complete when the certificate is issued, states that:

"Since it is unlikely that any steps short of securing a certificate of incorporation would be held to constitute apparent compliance, the possibility that a de facto corporation could exist under such a provision is remote."

Similarly, Professor Hornstein in his work on Corporate Law and Practice (1959) observes at § 29 that: "Statutes in almost half the jurisdictions have virtually eliminated the distinction between de jure and de facto corporations [citing § 139 of the Model Act]."

The discussion of the Illinois Act which was prepared by the draftsmen of that Act

---

12. Taylor v. Aldridge, 180 Miss. 635, 178 So. 331 (1938); 8 Fletcher §§ 3944–52.

13. The point is best illustrated by Western Machine Works v. Edwards Machine & Tool Corp., 223 Ind. 655, 63 N.E.2d 535 (1945), which considered a similar

statutory scheme and held that a de jure corporation is formed when the certificate of incorporation is issued and that conditions mentioned in the following section of the statute are only conditions for beginning business, not for organization of the corporation.

appeared in 1 Illinois Business Corporation Act Annotated 462–465 (1947 ed.), and noted:

> "While there are no decisions on the point, it is probable that no steps short of securing a certificate of incorporation would be heard to constitute such apparent compliance. And, as already stated, under the present act, upon issuance of the certificate, de jure incorporation is complete."

The portion of § 29–921c which states that the certificate of incorporation will be "conclusive evidence" that all conditions precedent have been performed eliminates the problems of estoppel and de facto corporations once the certificate has been issued. The existence of the corporation is conclusive evidence against all who deal with it. Under § 29–950, if an individual or group of individuals assumes to act as a corporation before the certificate of incorporation has been issued, joint and several liability attaches. We hold, therefore, that the impact of these sections, when considered together, is to eliminate the concepts of estoppel and de facto corporateness under the Business Corporation Act of the District of Columbia. It is immaterial whether the third person believed he was dealing with a corporation or whether he intended to deal with a corporation.[14] The certificate of incorporation provides the cut off point; before it is issued, the individuals, and not the corporation, are liable.

 Turning to the facts of this case, Penn Ave. Record Shack, Inc. was not a corporation when the original agreement was entered into, when the lease was assigned, when Levy took over Robertson's business, when operations began under the Penn Ave. Record Shack, Inc. name, or when the bill of sale was executed. Only on January 17 did Penn Ave. Record Shack, Inc. become a corporation. Levy is subject to personal liability because, before this date, he assumed to act as a corporation without any authority so to do. Nor is Robertson estopped from denying the existence of the corporation because after the certificate was issued he accepted one payment on the note. An individual who incurs statutory liability on an obligation under section 29–950 because he has acted without authority, is not relieved of that liability where, at a later time, the corporation does come into existence by complying with section 29–921c. Subsequent partial payment by the corporation does not remove this liability.

The judgment appealed from is reversed with instructions to enter judgment against the appellee on the note and for damages proved to have been incurred by appellant for breach of the lease.

Reversed with instructions.

---

14. In the present case, Robertson admitted intending to deal with a corporation