MIGUEL CORDERO, demandante y recurrente, *v.* SUPERMERCADO SAN JUAN, INC. y OTROS, demandados y recurridos.

*Número:* R-73-7          *Resuelto:* 30 de abril de 1975

*Pedro H. Ríos,* abogado del recurrente; *Enrique Ramírez Moll,* abogado de los recurridos.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El demandante vendió un negocio dedicado a la venta de comestibles y misceláneas relacionadas, conocido con el nombre comercial de Supermercado La Gran Parada. La transacción se elevó a escritura pública en la cual comparecieron como vendedor Miguel Cordero y su esposa y como compradores, Don Juan Hernández Rodríguez, Don Manuel Durán y Don Juan Aponte de Jesús. El precio convenido fue de $33,000 del cual el vendedor recibió antes del otorgamiento de la escritura $5,000 y $20,000 al momento de la firma. Los restantes $8,000 serían pagados en tres plazos anuales de $2,666.66. No habiéndose pagado los $8,000 adeudados, el vendedor demandó a los tres compradores antes mencionados y a la Corporación Supermercados San Juan, Inc.

El tribunal de instancia desestimó la demanda "en cuanto a los demandados en su carácter individual." Basa su posición en que "en parte alguna de la escritura mencionada se hace constar que el precio aplazado de $8,000 constituye una deuda personal e individual, no empece que se hace constar tanto en la comparecencia como en la cláusula bajo la que se hace la venta que los mencionados señores adquirirían para la corporación y que las partes aceptaron . . . que la parte compradora había venido actuando como una corporación de facto y como tal se otorga la referida escritura . . . ."

En la escritura número cinco de 21 de marzo de 1969, otorgada ante el Notario Efraín Rivera Maldonado, comparecen como vendedor Miguel Cordero Rivera y su esposa Elena Colón y como compradores Juan Hernández Rodríguez, Manuel

Durán y Juan Aponte de Jesús, manifestando los compradores que "han convenido entre sí la creación y organización de una corporación para adquirir por compra, operar, explotar el descrito comercio, encontrándose en trámites y gestiones encaminadas hacia ese fin bajo acuerdos y estipulaciones que han convenido y por no estar terminadas dichas gestiones, vienen operando como una corporación de facto pendiente la creación definitiva de dicha entidad." Se consignó en la escritura que "la parte vendedora, Vende, Cede y Traspasa a la Parte Compradora, que la adquiere en proporción de partes iguales para cada uno de los tres comparecientes compradores para la corporación que están en vías de organizar el comercio descrito en el párrafo primero precedente para que lo posea y disfrute como su única dueña." Al firmar la escritura lo hacen el compareciente de la primera parte Miguel Cordero y su esposa y los comparecientes de la segunda parte Juan Hernández Rodríguez, Manuel Durán y Juan Aponte de Jesús.

Aunque los compradores declaran en la escritura de compraventa que "vienen operando como una corporación de facto pendiente la creación definitiva de dicha entidad, manifiestan sin embargo que adquieren el negocio en cuestión en proporción de partes iguales para cada uno de los tres comparecientes compradores para la corporación que están en vías de organizar." Tales expresiones constituyen un convenio o compromiso entre ellos, que no afectan sus obligaciones respectivas como compradores individuales frente a la parte vendedora.

No podemos convenir con la conclusión del juez sentenciador de que el negocio fue adquirido por la corporación que intentaban organizar los compradores, ni tampoco con que los $8,000 que fueron aplazados del precio total constituyen una deuda de la presunta corporación.

La figura jurídica "corporación de facto", ficción creada por los tribunales, ha sido fuertemente criticada. *Timberline Equi. Company, Inc.* v. *Davenport*, 514 P.2d 1109 (Or. 1973) ;

*Robertson* v. *Levy,* 197 A.2d 443 (D.C.C.A. 1964); Frey, *Legal Analysis and the De Facto Doctrine,* 100 U. Pa. L. Rev. 1153, 1180 (1952).

■ Para que pueda considerarse a un grupo de personas como una "corporación de facto" se necesita algo más que una mera expresión de que tienen el propósito de organizarse como una corporación. Es preciso que haya un cumplimiento sustancial con la Ley de Corporaciones y se haya otorgado y radicado el certificado de incorporación, que haya actuado como tal corporación y que sólo falte cumplir con algunos de los requisitos que la ley exige. Ballantine, *On Corporations,* Sec. 24, pág. 77 *et seq.* (1946); 8 *Fletcher Cyc. Corp.,* Sec. 3777 (Perm. ed.).

A la fecha en que se celebró la transacción que dio origen a este pleito ni siquiera se había otorgado el certificado de incorporación, por lo que no había base para asumir la existencia de una corporación *de facto.*

■ En vista de lo anteriormente expuesto, es inevitable concluir que el demandante vendió su negocio a los tres compradores comparecientes, en su carácter individual, y que éstos le son responsables personalmente al vendedor por el balance aplazado del precio.

*Se revocará la sentencia que dictó el Tribunal Superior, Sala de Caguas, Santiago Matos, J., el 31 de julio de 1972.*