# 2006 DTA 36

### TRIBUNAL DE CIRCUITO DE APELACIONES
### REGIÓN JUDICIAL DE CAGUAS

HILDA LOZADA CRUZ, *ET ALS.*
Apelados

v.

LUIS MEDINA DÍAZ, *ET ALS.*
Apelantes

Núm. KLAN-2005-00328

San Juan, Puerto Rico, a 20 de enero de 2006

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces Colón Birriel y Hernández Torres

Colón Birriel, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

Luis Medina Díaz, Rebecca Cartagena y la Sociedad Legal de Gananciales por ellos compuesta (en adelante, *"esposos Medina Cartagena"*) recurren solicitándonos la revocación parcial de la **Sentencia Enmendada** dictada el 23 de febrero de 2005, archivada en los autos copia de su notificación el 2 de marzo de ese año, por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, *"TPI"*) en el caso *Hilda Lozada Cruz y otros v. Luis Medina Díaz y otros,* Civil Núm. EAC1997-0212, sobre: reivindicación de bienes, nulidad de testamento, declaratoria de herederos y daños y perjuicios. Mediante el referido dictamen, el TPI declaró Ha Lugar la demanda presentada en cuanto a la causa de acción por reivindicación de determinada propiedad ubicada en la Urbanización Bonneville Heights y sobre reconocimiento de participación de la Sra. Hilda Lozada Cruz (en adelante, *"señora Lozada Cruz"*) en la referida propiedad.

Resolvemos con el beneficio de la comparecencia de las partes, el derecho y la jurisprudencia aplicable, no sin antes exponer el trasfondo fáctico de lo acontecido.

## II

En 1981, el Sr. Carlos Rafael Medina Díaz (en adelante, *"Carlos Medina"*), esposo de la señora Lozada Cruz y padre de los menores Carlos Miguel y María del Mar Medina Lozada, abrió el negocio de cerrajería, Centro Llaves, en un local arrendado ubicado en la Avenida Degetau F-13, en la Urbanización Bonneville Terrace de Caguas. A los pocos meses se incorporó a trabajar en el negocio el hermano de Carlos Medina, Luis Medina Díaz (en adelante, *"Luis Medina"*). En lugar de salario, recibía un por ciento de las ventas. Carlos Medina fungió como dueño del negocio, por cuanto era el que contrataba al personal, hacía el inventario, cuadraba la caja y quien se reconocía como tal por los comerciantes de la vecindad. El 28 de noviembre de 1995, según solicitado por Carlos Medina, Luis Medina y Edwin Roldán Rivera, el Departamento de Estado certificó el registro e incorporación de C. L. Medina Corp. Así se convirtió el negocio de cerrajería en una corporación con fines de lucro organizada bajo las leyes de Puerto Rico. (*Escrito de Apelación*, Ap. 36, a las págs. 158-161.)

De otra parte, el 1 de mayo de 1995, Carlos Medina y Luis Medina comparecieron ante el Notario Público Nicolás Díaz Ruiz como vicepresidente y presidente (respectivamente) de Medina & Medina Inc., una corporación pendiente de incorporar en el Departamento de Estado. ■ Allí, junto a los vendedores y aquí codemandados, el Sr. Walter Malavé Rivera y la Sra. Jeannice Thillet Lugo, representados por Luis Malavé Merly mediante Poder General, ■ suscribieron la Escritura Número Trece (13), sobre: Compraventa, Asumiendo Hipoteca Con Condición Suspensiva. En ésta se consignó la compraventa del inmueble sito en el solar número uno (1) del Bloque GG de la Urbanización Bonneville Heights del Barrio Cañabón de Caguas (en adelante, *"inmueble de Bonneville"*). El precio convenido fue de $21,000; suma entregada en dicho acto por los compradores Carlos Medina y Luis Medina, según hecho constar por el notario autorizante bajo su fe notarial. Además, éstos se obligaron a asumir la responsabilidad de pago y a subrogarse formalmente en la hipoteca que a favor de R & G Mortgage Corporation afectaba a dicho inmueble por la suma de $56,000. En lo pertinente, en la mencionada escritura se dispuso:

*"TRES: Que LOS COMPRADORES la corporación MEDINA & MEDINA, INC., se encuentran en proceso de inscribir la misma ante el DEPARTAMENTO DE ESTADO DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO y que la presente escritura se ha otorgado por los comparecientes con la condición suspensiva de que la misma se presentará ante el Registro de la Propiedad cuando éstos tengan evidencia de la inscripción de la misma en dicha entidad gubernamental.*

*SIETE: LOS COMPRADORES, entran desde esta fecha y **sin otro acto que el presente otorgamiento** en la posesión y disfrute del inmueble aquí adquirido, obligándose la parte VENDEDORA a su saneamiento conforme a derecho."* (Énfasis suplido.) (*Escrito de Apelación*, Ap. 34, a las págs. 148-152.)

Posteriormente, tras ser remodelado, este inmueble fue empleado como casa de apartamentos. ■

Así las cosas, mediante Escritura Número Seis (6), sobre: Testamento Abierto, el 10 de octubre de 1995, Luis Medina compareció ante la Notaria Pública, Eugenia Margarita Cruz Sánchez y expresó su voluntad testamentaria. Designó como único heredero de su participación en el inmueble de Bonneville a su hermano Carlos Medina. (*Escrito de Apelación*, Ap. 33, a las págs. 142-147.) De igual manera, el 13 de octubre de 1995, Carlos Medina compareció ante dicha notaria y otorgó la Escritura Número Ocho (8) sobre Testamento Abierto. Al testar, Carlos Medina mencionó la existencia de su esposa, la señora Lozada Cruz, e hijos, Carlos Miguel y María del Mar Medina Lozada, aunque no les instituyó como herederos ni reconoció sus derechos como tales. Dispuso que a su muerte el inmueble de Bonneville, alegadamente adquirido por la Corporación C & L, pasaría en pleno dominio a su hermano Luis Medina, precisando que ni sus descendientes ni su esposa tendrían

participación alguna en dicha propiedad. (*Escrito de Apelación*, Ap. 32, a las págs. 137-141.)

El 5 de julio de 1996, Carlos Medina falleció en un accidente de motora. A su muerte, su hermano Luis Medina continuó operando el negocio Centro Llaves. Éste abrió una cuenta en el Banco Popular junto a la viuda, la señora Lozada Cruz, a fin de que los depósitos del negocio se hicieran en ella. Sin embargo, posteriormente surgieron desavenencias entre las partes, las que provocaron la presentación de otros pleitos ■ y desembocaron en el cierre del negocio Centro Llaves. Poco tiempo después, Julio Medina Casul, primo de Carlos Medina y Luis Medina, quien previamente había trabajado siete (7) meses en el negocio, alquiló un local en el mismo edificio y abrió el negocio Centro de las Llaves. Por su parte, la señora Lozada Cruz sostiene que este era el mismo negocio que Centro Llaves y por ende le pertenecía en parte a la sucesión de Carlos Medina.

De otra parte, pasados poco más de tres (3) meses de la muerte de Carlos Medina, el 18 de octubre de 1996, Luis Medina volvió a comparecer ante el notario Nicolás Díaz Ruiz, pero en esta ocasión a nombre propio y acompañado de su esposa, la Sra. Rebecca Cartagena. Allí suscribió la Escritura Número Treinta y Tres (33), en la que se consignó la compra del inmueble de Bonneville, el mismo bien que antes, como presidente de la inregistrada corporación Medina & Medina, Inc, había adquirido junto a su hermano Carlos Medina. En esta oportunidad, el precio de venta y los vendedores fueron los mismos que en la ocasión anterior. En lo pertinente, en la escritura el notario autorizante declaró que:

"*DOS: Se realiza esta compraventa por el convenido y ajustado precio de VEINTIUN MIL DOLARES ($21,000.00) cuya suma LOS VENDEDORES reciben de manos de LOS COMPRADORES en moneda de curso legal de los Estados Unidos de América en este acto y en mi presencia, por lo que LOS VENDEDORES le entregan a LOS COMPRADORES, la más formal y eficaz carta de pago.*" ■ (*Escrito de Apelación*, Ap. 37, a las págs. 162-166.)

En consideración a los eventos acaecidos con posterioridad a la muerte de Carlos Medina, el 5 de mayo de 1997, la señora Lozada Cruz y los hijos de Carlos Medina presentaron ante el TPI la demanda de epígrafe, sobre: reivindicación de bienes, nulidad de testamentos, declaratoria de herederos y daños y perjuicios. En ella reclamaron su participación en el negocio Centro Llaves, los ingresos dejados de percibir en dicho negocio, la devolución del negocio en marcha, su participación en el inmueble de Bonneville, la nulidad del testamento por razón de la preterición de los herederos forzosos y los daños y prejuicios causados por las actuaciones reseñadas. El 12 de diciembre de 1997, la demanda fue enmendada a los únicos fines de añadir el párrafo número 13, en el que se incluyó como demandados a Medina & Medina, Inc. y/o C & L, Inc.

Luego de otros trámites procesales, la vista en su fondo se llevó a cabo los días 20 y 21 de noviembre de 2001. Evaluada la prueba, el 13 de febrero de 2002, el TPI emitió una *Sentencia* en la que: 1) desestimó la reconvención instada por Luis Medina contra la señora Lozada Cruz, sobre difamación; 2) desestimó la reclamación sobre ingresos dejados de percibir y devolución del negocio Centro de las Llaves; 3) determinó que la Escritura Número Treinta y tres (33) del 10 de octubre de 1996, no tuvo el efecto de transmitir dominio alguno a los esposos Medina Cartagena, ya que el vendedor en calidad de apoderado había transmitido el 1 de mayo de 1995 los derechos propietarios de Walter Malavé Rivera y Jeannice Thillet Lugo a favor de Carlos Medina y Luis Medina; y 4) estableció que el inmueble de Bonneville es en parte propiedad de la sucesión de Carlos Medina. Sin embargo, el TPI manifestó la ausencia de prueba necesaria para determinar: 1) los créditos que corresponden a cada parte por el costo de remodelación, pagos de hipoteca y cánones de arrendamiento de los apartamentos del inmueble de Bonneville; y 2) si era o no oficioso el legado a favor de Luis Medina. (*Escrito de Apelación*, Ap. 28, a las págs. 86-103.)

Emitidas por el TPI *Resolución Enmendatoria* y *Sentencia Enmendada Nunc Pro Tunc* y presentada *Moción de Reconsideración Parcial* por los esposos Medina Cartagena, inconformes con la determinación del TPI, el 21 de marzo de 2002, los esposos Medina Cartagena presentaron el recurso KLAN-2002-00253 ante el

extinto Tribunal de Circuito de Apelaciones (en adelante, *"TCA"*). Su recurso fue resuelto mediante *Resolución* de 30 de mayo de 2002, notificada el 5 de junio de 2002, en la que el TCA se negó a intervenir, por concluir que el recurso era prematuro, e instó al TPI a recibir prueba para luego hacer una adjudicación final de las controversias planteadas. Devuelto el caso al TPI, el 5 de junio de 2003, los esposos Medina Cartagena presentaron *Moción de Desestimación* al amparo de las disposiciones de la Regla 39.2 (b) de Procedimiento Civil. Sin embargo, mediante *Resolución y Orden* de 7 de julio de 2003, el TPI denegó lo solicitado y señaló vista evidenciaria para el 23 de septiembre de 2003, la cual se realizó el 18 de noviembre de 2003. En dicha audiencia, las partes estipularon que el legado en controversia era oficioso.

Finalmente, el 4 de febrero de 2005, las partes presentaron en conjunto una *Estipulación de Hechos*, en la que acordaron el precio del inmueble de Bonneville al momento del fallecimiento de Carlos Medina y el valor estimado de su caudal. A base de dicho acuerdo, el 23 de febrero de 2005, el TPI dictó **Sentencia Enmendada**, notificada el 2 de marzo de ese año, declarando Con Lugar la demanda presentada en cuanto a la causa de acción por reivindicación y sobre reconocimiento de participación de la señora Lozada Cruz del inmueble de Bonneville. Así pues se dispuso que: 1) el legado dejado a Luis Medina, ascendente a $60,000, no resulta inoficioso dentro de un caudal estimado en $400,000, por lo que los herederos de Carlos Medina deberán considerar la existencia de dicho legado al momento de realizar la partición; 2) el 25% del inmueble de Bonneville pertenece a la señora Lozada Cruz, por tratarse de una propiedad comprada por Carlos Medina mientras estuvo casado, sin que se probase que los bienes para su compra fueron privativos; 3) la señora Lozada Cruz tiene derecho a aquellos beneficios obtenidos del inmueble en lo equivalente a su participación, ascendente a $19,372.25, y que deberán ser satisfechos por Luis Medina, quien retuvo indebidamente el inmueble; 4) Luis Medina tiene derecho a un crédito por la suma de $161,710.97 por las reparaciones, mejoras y el pago de hipoteca del inmueble de Bonneville, a lo cual se descontará lo que retuvo indebidamente en rentas recibidas por el arrendamiento de los apartamentos; y 5) Luis Medina deberá pagar $6,000 e intereses al 5%, desde el 5 de mayo del 1997 hasta el saldo total, debido a su actuación temeraria de apoderarse del inmueble de Bonneville en perjuicio de la sucesión de Carlos Medina y su codueña, la señora Lozada Cruz, y realizar una compraventa fraudulenta con el fin de no tener que dividir sus beneficios. (*Escrito de Apelación*, Ap. 53, a las págs. 208-230.)

Inconforme con la determinación, el 17 de marzo de 2005, los esposos Medina Cartagena presentaron su recurso de apelación, en el adujeron que incidió el TPI:

*"1. Al no reconocer los derechos del legatario de cosa específica y determinada a los frutos o rentas pendientes desde la muerte del testador en violación expresa al Artículo 804 del Código Civil.*

*2. Al reconocer la validez de la escritura de 1 de mayo de 1995, ignorando su condición suspensiva y presumiendo una aportación de cincuenta (50%) por ciento a una comunidad de bienes inexistente a pesar de que la prueba incontrovertida fue de que todo el dinero fue aportado por los esposos Medina Cartagena.*

*3. Al anular un negocio jurídico en ausencia de las partes que otorgaron el documento y que en su consecuencia eran partes indispensables.*

*4. Al negarse a admitir en evidencia fotocopia de un cheque previamente producido a la parte demandante y/o al no dar validez alguna a la prueba oral sobre la forma de pago y quién lo realizó ignorando así la prueba incontrovertida que desfilara en juicio.*

*5. Al emitir unas determinaciones de hechos que no constituyen el balance más racional y justiciero de la prueba y al no desestimar en su totalidad la demanda enmendada.*

*6. Al imponer honorarios de abogado e intereses por temeridad a la parte sustancialmente prevaleciente y*

*la cual sólo reclamó sus derechos legales que le fueron reconocidos parcialmente en la sentencia apelada y al no imponerles honorarios de abogado a la parte apelada por su evidente temeridad en el trámite del caso de epígrafe.*

*7. Al reconocerle un veinticinco (25%) por ciento de participación a la señora Lozada Cruz en la propiedad objeto del legado descartando así parcialmente la intención del testador."*

El 20 de julio de 2005, la señora Lozada Cruz presentó su alegato en oposición.

### III

Los numerosos señalamientos de error levantados por los apelantes, principalmente van dirigidos a cuestionar las determinaciones de hechos formuladas por el TPI. Conocido es que el alcance de la revisión judicial sobre la apreciación de la prueba desfilada ante el TPI está regulado por lo dispuesto en la Regla 43.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 43.2, la cual en lo pertinente dispone que: *"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos".* Así pues, cuando una parte opta por impugnar un dictamen producido después de que el foro recurrido haya escuchado y aquilatado prueba testifical, la norma imperante en Puerto Rico es que, en ausencia de pasión, parcialidad o error manifiesto, los tribunales apelativos no intervendremos con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos en el ámbito de instancia. Constituye jurisprudencia reiterada que en ausencia de esa demostración, la determinación a que llegue el foro recurrido será merecedora de gran deferencia por los foros apelativos, por cuanto el juzgador en instancia es quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Álvarez De Choudens v. Rivera Vázquez,* Op. de 17 de junio de 2005, **2005 J.T.S. 90,** a las págs. 1369-1370; *Lugo Ortiz v. Municipio De Guayama,* Op. de 29 de octubre de 2004, **2004 J.T.S. 171,** a las págs. 348-349; *López Delgado v. Cañizares,* Op. de 5 de octubre de 2004, **2004 J.T.S. 165,** a las págs. 298-299; *Arguello v. Arguello,* Op. de 31 de agosto de 2001, **2001 J.T.S. 127,** a la pág. 94.

Sin embargo, en el ejercicio de nuestra facultad revisora, tenemos amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándonos en la misma posición que los tribunales de primera instancia para ejercer nuestra discreción y hacer nuestras propias conclusiones. *López Delgado,* **2004 J.T.S. 165,** a las págs. 298-299; *Hernández v. San Lorenzo Const.,* 153 D.P.R. 405, 425 (2001); *Moreda v. Rosselli,* 150 D.P.R. 473, 479 (2000); *Cruz v. Centro Médico de P.R.,* 113 D.P.R. 719, 721 (1983); *Velázquez v. Ponce Asphalt,* 113 D.P.R. 39, 48 (1982).

En la situación de autos, hemos considerado el récord, incluyendo la exposición narrativa estipulada de la prueba desfilada ante el TPI y no hallamos motivo para intervenir con las determinaciones de hechos del foro recurrido. Veamos.

Mediante su segundo, tercero, cuarto y quinto señalamiento, los apelantes plantean que erró el TPI al interpretar el alcance de la compraventa del inmueble de Bonneville efectuada mediante la escritura Número Trece (13). En lo pertinente, es menester destacar que en dicho instrumento se consignó que: 1) Carlos Medina y Luis Medina comparecieron como *"LOS COMPRADORES",* en calidad de vicepresidente y presidente (respectivamente) de Medina & Medina Inc.; 2) el precio convenido fue entregado en dicho acto por éstos, hecho constatado por el notario autorizante bajo su fe notarial; 3) la escritura se otorgó con la condición suspensiva de que la misma se presentaría ante el Registro de la Propiedad cuando se evidenciara la inscripción de Medina & Medina Inc. en el Departamento de Estado; y 4) que *"LOS COMPRADORES"* entraban desde esa fecha y **sin otro acto que dicho otorgamiento** en la posesión y disfrute del inmueble de Bonneville. (*Escrito de Apelación,* Ap. 34, a las págs. 148-152.)

Los hechos que motivan la presente causa de acción ocurrieron bajo el estado de derecho anterior a la aplicación de la Ley General de Corporaciones de 1995. ■ Así pues, tratándose de un negocio jurídico efectuado en nombre de una corporación no inscrita, nos corresponde evaluar la doctrina de corporación *de facto*, modalidad elaborada para la protección de aquellas personas que, en el proceso de organizar una corporación, incumplen algunos requisitos legales para su incorporación. En estos casos se permite que cuando **se ha realizado un intento *bona fide* de incorporación**, se reconozca la existencia del ente corporativo y se le brinde la protección de dicha personalidad a sus incorporadotes. ■ (Énfasis suplido.) *Asoc. Res. Est. Cidra v. Future Dev.*, 152 D.P.R. 54, 71 (2000); *Cordero v. Supermercado San Juan, Inc.*, 103 D.P.R. 783, 758-786 (1975); Carlos Díaz Olivo, *Corporaciones*, Publicaciones Puertorriqueñas, 1999, a las págs. 47-50.

En *Cordero*, 103 D.P.R., a la pág. 786, nuestro Tribunal Supremo aclaró:

*"Para que pueda considerarse a un grupo de personas como una "corporación de facto", se necesita algo más que una mera expresión de que tienen el propósito de organizarse como una corporación. Es preciso que haya un cumplimiento sustancial con la Ley de Corporaciones y se haya otorgado y radicado el certificado de incorporación, que haya actuado como tal corporación y que sólo falte cumplir con algunos de los requisitos que la ley exige."* (Citas omitidas.)

En el caso de autos, según observado por el TPI en su *Sentencia Enmendada*, no existe controversia alguna entre las partes en torno a que al momento de otorgarse el contrato de compraventa, Carlos Medina y Luis Medina no habían otorgado el certificado de incorporación de Medina & Medina, Inc. De modo que no se trata de que el certificado de inscripción se hubiera otorgado y que algún defecto impidió su eventual inscripción, sino que a la fecha del contrato no se había realizado esfuerzo alguno para cumplir con la ley. En estas circunstancias, no cabe invocar la doctrina de corporación *de facto*, siendo los comparecientes en dicho negocio jurídico las partes verdaderamente obligadas por la compraventa del inmueble de Bonneville.

En nuestra jurisdicción, la comunidad de bienes está reglamentada por los contratos que las crean, las disposiciones especiales aplicables y, **a falta de éstos**, por lo dispuesto en los Arts. 326 a la 340 del Código Civil, 31 L.P.R.A. §§ 1271-1285. El Art. 326 del Código Civil dispone que existe una comunidad de bienes "*cuando la propiedad de una cosa o de un derecho pertenece pro indiviso a varias personas*". 31 L.P.R.A. § 1271. Es decir, "*se trata de una situación en que dos o más personas son titulares de un mismo derecho, o lo que es lo mismo, cuando un derecho o conjunto de derechos están atribuidos a una pluralidad de sujetos, correspondiéndoles en común*". *Asoc. Res. Urb. Sgdo. Corazón, Inc. v. Arsuaga Álvarez*, Op. de 24 de septiembre de 2003, **2003 J.T.S 145**, a la pág. 126, citando a F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra. ed. rev., Madrid, Ed. Pirámide, 1976, T.II, pág. 259; J. Castán Tobeñas, *Derecho Civil Español Común y Foral*, 13ra. ed. rev., Madrid, Ed. Reus, 1987, T.II, Vol. 1, pág. 449. La participación de los comuneros en la administración de la cosa tenida en común, así como **su parte en el activo y pasivo de esta cosa, será proporcional a sus respectivas cuotas, que** *"[s]e presumirán iguales, mientras no se pruebe lo contrario"*. Art. 327 del Código Civil, 31 L.P.R.A. § 1272. (Énfasis suplido.) Conforme a lo anterior, en ausencia de prueba que distinga la participación de cada uno de los comparecientes en calidad de compradores en el otorgamiento de la Escritura Número Trece (13), se entiende que la compraventa del inmueble de Bonneville aprovechó a cada uno (Luis Medina y Carlos Medina) en partes iguales.

Finalmente, resta examinar la participación de Carlos Medina, cuya adquisición entendemos resulta en beneficio de la sociedad de bienes gananciales compuesta entre éste y su esposa, la señora Lozada Cruz. Dicha interpretación resulta mandatoria, pues como norma general y ante la ausencia de capitulaciones matrimoniales, el régimen económico matrimonial reconocido por nuestro ordenamiento civil es la sociedad legal de bienes gananciales; el cual, salvo contadas exclusiones, comprende los bienes, activos y pasivos, adquiridos durante la vigencia del matrimonio. 31 L.P.R.A. §§ 3551 y 3647. Así pues, conocido es que cuando se extingue dicha sociedad, al momento de liquidarse, procede adjudicar los bienes gananciales en partes iguales para cada

cónyuge. 31 L.P.R.A. § 3621.

De otra parte, mediante su primer y séptimo señalamiento de error, los apelantes cuestionan la interpretación y adjudicación del legado realizado por Carlos Medina a Luis Medina, mediante la Escritura Número Ocho (8) de 13 de octubre de 1995.

Un legado es una "*atribución que hace el causante en su testamento a favor de una o varias personas, determinadas o indeterminadas, por la cual ordena a uno o más de sus herederos, al albacea o al legatario, que proceda a dar o hacer a su debido tiempo al legatario, una cosa, un derecho o un servicio*". Efraín González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ramallo, Vol. II, 1983, a la pág. 338. Contrario al heredero, que es un sucesor a título universal y sucesor del causante en la universalidad de las relaciones jurídicas de éste, el legatario es sucesor a título particular, y por lo tanto, sucesor en bienes, derechos o valores patrimoniales determinados. José Ramón Vélez Torres, *Curso de Derecho Civil-Derecho de Sucesiones*, San Juan, U.I.P.R., 2da. ed., Tomo IV, Vol. III, 1997, a la pág. 304.

Conforme al Art. 804 del Código Civil, 31 L.P.R.A. § 2493, "*[c]uando el legado es de cosa específica y determinada, **propia del testador**, el legatario adquiere su propiedad desde que aquél muere, y hace suyos los frutos o rentas pendientes, pero no las rentas devengadas y no satisfechas antes de la muerte*". (Énfasis suplido.) Es decir, tan pronto ocurre la muerte del causante, el legatario designado adviene titular de cosa específica que, **siendo del testador,** es objeto del legado. Sin embargo, la titularidad del legado constituye una "*propiedad especial, condicionada y con consecuencias distintas a la verdadera propiedad*". *Rivera Fábregas v. Sanoguet Asencio,* Op. de 13 de mayo de 2005, **2005 J.T.S. 70**, a la pág. 1220; *Narváez Cruz v. Registrador,* Op. de 4 de enero de 2002, **2002 J.T.S. 7**, a la pág. 605. Así pues, el Art. 807 del Código Civil, 31 L.P.R.A. § 2496, dispone que "*[e]l legatario no puede ocupar por su propia autoridad la cosa legada, sino que debe pedir su entrega y posesión al heredero o al albacea cuándo éste se halle autorizado a darla*". En otras palabras, este artículo limita la propiedad que el legatario adquiere automáticamente con la muerte del causante, toda vez que **no puede disponer con libertad del bien hasta que los herederos o el albacea le hagan entrega del mismo**. Dicha transmisión del dominio al legatario está condicionada a consideraciones prácticas de gran interés público tales como: saldar las deudas del causante, la holgada protección de las legítimas, y la suficiencia de bienes relictos para el pago de los respectivos legados. Manuel Albaladejo García, *Comentarios al Código Civil y Compilaciones Forales - Dirigidas por Manuel Alb*aladejo, Madrid, Ed. Edersa, Tomo XII, Vol. 1, 1981, a las págs. 332-334.

El profesor González Tejera amplía lo anteriormente expuesto al expresar que:

"*Permitir al legatario apoderarse de la cosa objeto del legado, con meramente acreditar la muerte del testador y presentar copia del testamento, produciría múltiples inconvenientes a la sucesión. El testamento podría ser impugnado, planteándose problemas de cobro de lo indebido; los poseedores de los bienes relictos podrían tener válidas reclamaciones que oponer al heredero albacea; los bienes pueden no ser suficientes para pagar todos los legados; el legado puede ser ineficaz total o parcialmente; el legado puede lesionar la legítima de un heredero forzoso; los bienes pueden no ser suficientes para cubrir deudas y gastos lanzándose los acreedores a litigar con los legatarios, o a los legatarios a litigar entre sí, en los casos donde la ley o el testamento establece preferencias de unos legatarios sobre otros. Por ello, la norma jurídica de que el legatario deberá pedir la entrega de la cosa y no ocuparla por su cuenta, está revestida de interés público porque, en adición a todo lo apuntado, propende a conservar la paz social pues **evita las confrontaciones que de ordinario se producen cuando se ocupan bienes y evita la litigación en torno a los extremos antes apuntados.**"* (Énfasis suplido.) Efraín González Tejera, *Derecho Sucesorio Puertorriqueño*, San Juan, Ramallo, Vol. II, 1983, a la pág. 353.

El Artículo 786 del Código Civil a su vez dispone que no se puede dar en legado la cosa ajena, y de así

hacerse es nulo. 31 L.P.R.A. §. 2475. Este principio surge de la realidad jurídica que *"los bienes que no forman parte del patrimonio del causante, no puede ser objeto de transmisión sucesoria"*. J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 8va. Ed., Madrid, Ed. Reus, 1973, Tomo VI, Vol. II, a la pág. 361. Sin embargo, será válido el legado de cosa ajena cuando el testador lo legare con conocimiento de que no le pertenecía. 31 L.P.R.A. § 2474. Entonces, *"[e]l heredero estará obligado a adquirirla para entregarla al legatario; y no siéndole posible, a dar a éste su justa estimación"*. 31 L.P.R.A. § 2474.

Aplicando tales principios de derecho, estipulado por las partes su efectividad, encontramos que Carlos Medina le legó al aquí apelante Luis Medina, mediante testamento abierto, la participación que adquirió por la Escritura Número Trece (13) en el inmueble de Bonneville. Sin embargo, como expresáramos, dicho interés no pertenece individualmente Carlos Medina, sino a la sociedad legal de gananciales en la cual éste y la señora Lozada Cruz tienen participaciones iguales. Por tanto, según interpretara el TPI, a la muerte de Carlos Medina, la señora Lozada Cruz adquirió un interés indiviso de la mitad de la participación adquirida por su esposo en el inmueble de Bonneville, no por herencia, sino como dueña. Así las cosas, considerado que los bienes que no forman parte del patrimonio del causante no pueden ser objeto de transmisión sucesoria, reconocido por Carlos Medina, el carácter ajeno de lo legado a Luis Medina corresponde a la sucesión de éste adquirir la participación de la señora Lozada Cruz para entregarla al legatario o, de no ser posible, darle su justa estimación.

Finalmente, en su sexto señalamiento, los apelantes plantean que el TPI erró al imponerles honorarios de abogado por temeridad.

Según se conoce, la Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.1, autoriza este tipo de condena siempre que cualquier parte o su abogado hubiese procedido con temeridad o frivolidad. El Tribunal Supremo de Puerto Rico ha aclarado que el propósito de la imposición de honorarios de abogado es sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito. Véanse, *Jarra Corporation v. Axxis Corporation*, Op. de 30 de noviembre de 2001, **2001 J.T.S. 167**, a la pág. 492; *Fernández v. S.J. Cement Co., Inc.*, 118 D.P.R. 713, 718 (1987).

El Tribunal Supremo de Puerto Rico ha expresado que la el TPI goza de amplia discreción en este tipo de determinaciones. *Quiñones López v. Manzano Posas,* 141 D.P.R. 139, 181 (1996); *Ramírez v. Club Cala de Palmas,* 123 D.P.R. 339, 349 (1989); *Fernández,* 118 D.P.R., a la pág. 717; *Raluán Corp. v. Feliciano,* 111 D. P.R. 598, 601-602 (1981). El Tribunal apelativo sólo intervendrá cuando se hubiera abusado de esta facultad. *Ramos Báez v. Bossolo López,* 143 D.P.R. 567, 571-572 (1997); *Cotto Morales v. Ríos,* 140 D.P.R. 604, 626 (1996).

En el caso de autos, los apelantes no nos han convencido de que el TPI hubiera errado al imponerles honorarios de abogado por temeridad. Lo cierto es que habiendo participado en la compraventa del inmueble de Bonneville, Luis Medina conocía que legalmente no era el único dueño del bien, y, más tarde, advirtiendo su interés como legatario, por disposición testamentaria de Carlos Medina, debió pedir la entrega de la cosa y no ocuparla por su cuenta, lo cual habría evitado parte de la presente controversia.

Por los fundamentos antes expuestos, confirmamos la ***Sentencia Enmendada*** y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Caguas, al único fin de realizar la declaratoria de herederos del Sr. Carlos Medina, según lo solicitado por los apelados de epígrafe en su demanda.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones